**SENATE REALTY CORPORATION,
Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.**

**No. 376, Docket 74–1861.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 21, 1975.
Decided Feb. 20, 1975.

930

M. Lauck Walton, New York City (Donovan, Leisure, Newton & Irvine, John C. Baity, New York City, of counsel), for petitioner-appellant.

Robert G. Burt, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Bennet N. Hollander, Attys., Tax Div., Dept. of Justice, Washington, D. C., of counsel), for respondent-appellee.

Before WATERMAN, HAYS and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

Senate Realty Corporation (Senate), a New York corporation, received a statutory notice of deficiency dated February 15, 1966 from the Commissioner of Internal Revenue (IRS), which asserted deficiencies in the taxpayer's income taxes for the taxable year 1959 in the amount of $234,825.50 plus a penalty in the sum of $117,412.75. Redetermination proceedings in the Tax Court were commenced by an attorney then representing Senate on March 14, 1966. In November, 1969 Alfred Dallago, then President and principal stockholder of Senate, re-

tained Howard A. Rumpf, an experienced tax lawyer, to represent Senate in the pending Tax Court matter and so advised its prior attorney. On November 13, 1969 Dallago, on behalf of Senate, signed an IRS standard form of power of attorney (Form 2848) which authorized Rumpf to represent the taxpayer before the IRS. On December 8, 1969 Rumpf filed a notice of appearance on behalf of Senate with the Tax Court. During the next three years Rumpf on various occasions conferred with IRS representatives with a view to settling the claim. On April 27, 1972 Dallago died and his estate became the principal shareholder of Senate.

On December 11, 1972 Mr. George Kossoy, a New York attorney representing the Dallago estate, received a letter from Rumpf advising him that the proposed tax deficiency had been reduced "to approximately $100,000 from approximately $265,000" as the result of a conference with IRS, and that the Tax Court "should approve [such a settlement] early in 1973." On December 15, 1972 Kossoy wrote to Rumpf advising him that before any decision could be made on "the settlement which you hope you can make, it would be necessary for the estate and all those concerned with its welfare, to examine all the possible tax claims that may be asserted against the estate generally. I think that if we can somehow get to the point of knowing what the total claim would be that might be asserted against the estate as such, then we can possibly make an offer in compromise."

On May 7, 1973 Senate, through its attorney Rumpf, and IRS filed a settlement stipulation with the Tax Court which fixed the deficiency in income tax for the taxable year of 1959 at $117,412.75, plus a penalty of $58,706.38. The decision of the Tax Court pursuant to the stipulation was entered the same day. On August 20, 1973, two weeks after the decision of the Tax Court became final, IRS gave notice to Senate demanding payment of the stipulated deficiencies plus interest, in the sum total

of $259,906.80. Mrs. Alba Dallago, the widow of the former President of Senate, the sole beneficiary of his estate, and the new President of Senate, advised IRS in writing that the taxpayer objected to the assessment; that it would shortly file a power of attorney for another representative; and that it denied Rumpf was authorized to sign the Stipulation of Settlement, and that he had done so "without the knowledge or consent of the taxpayer."

On February 22, 1974 Senate filed a motion for special leave to file a motion to vacate the Tax Court's May 7, 1973 decision on the ground that it was procured by fraud upon the court. On March 18, 1974, after a hearing, the Tax Court denied the motion. This appeal ensued.

**I**

█ The narrow question before us is whether the Tax Court abused its discretion in denying Senate's motion for special leave to vacate a decision which had become final under Internal Revenue Code of 1954 §§ 7481(a)(1), 7483.[1] Rule 162 Rules of Practice and Procedure of the United States Tax Court, provides that a motion to vacate a decision more than 30 days after it was entered, must be by special leave of that court. The May 7, 1973 decision in issue here became final on August 7, 1973, so that the motion for special leave was necessary. Such a motion lies within the sound discretion of the Tax Court and the only ground of review is whether or not that Court abused its discretion in denying the motion. See Lentin v. CIR, 237 F.2d

5, 6 (7th Cir. 1956); Skenandoa Rayon Corp. v. CIR, 122 F.2d 268, 271 (2d Cir.), cert. denied, 314 U.S. 696, 62 S.Ct. 413, 86 L.Ed. 556 (1941). We find no abuse and affirm the order of the Tax Court.

The fraud claimed here is that Rumpf, as an "officer of the court," after being expressly directed by attorney Kossoy not to settle the claims herein, nevertheless executed an unauthorized stipulation terminating the suit brought by Senate.

█ Rumpf as an attorney is an officer of the court and here was not authorized to settle the claim even though he was authorized to appear in the Tax Court.[2] However the critical question is whether this is sufficient to constitute a fraud upon the court.

Professor Moore's definition is instructive:

"Fraud upon the court" should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases. . . .

7 J. Moore, Federal Practice ¶ 60.33, at 515 (2d ed. 1974). This formulation of the concept of fraud upon the court has been expressly adopted by this circuit in Kupferman v. Consolidated Research and Mfg. Corp., 459 F.2d 1072, 1078 (2d Cir. 1972), and Martina Theatre Corp. v. Schine Chain Theatres, Inc., 278 F.2d 798, 801 (2d Cir. 1960). While Senate claims that the settlement was unauthorized, there is no indication or claim that Rumpf made any misrepresentation of

---

1. We do not accept the position of IRS that neither the Tax Court nor any other court has jurisdiction to reconsider a final decision of the Tax Court. Although, for example, Jefferson Loan Co. v. CIR, 249 F.2d 364 (8th Cir. 1957) did hold that the Tax Court has limited statutory jurisdiction and could not vacate its own decision after it became final, that position has been rejected in other circuits at least where there is a claim of fraud upon the court. E. g., Toscano v. CIR, 441 F.2d 930, 932–33 (9th Cir. 1971); Kenner v. CIR, 387 F.2d 689, 691 (7th Cir.), cert. denied 393 U.S. 841, 89 S.Ct. 121, 21 L.Ed.2d 112 (1968);

Stickler v. CIR, 464 F.2d 368, 370 (3d Cir. 1972); Pasternack v. CIR, 155 U.S.App.D.C. 384, 478 F.2d 588, 593 (1973) (dictum).

2. E. g., Theard v. United States, 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957) (attorney is an officer of the court); Ricketts v. Pennsylvania R.R., 153 F.2d 757, 759–60 (2d Cir. 1946) (L. Hand, J.) (attorney has no implied authority to compromise a claim); ABA Code of Professional Responsibility, EC 7–7 (client must make decision whether to accept a settlement offer).

the facts in issue, that he had any improper motive, that IRS in any way cooperated with him in deceiving or defiling the court,[3] or even indeed that the compromise itself was unreasonable. Chief Justice Marshall in Holker v. Parker, 11 U.S. (7 Cranch) 436, 452, 3 L.Ed. 396 (1813) made the distinction a long time ago:

> Although an attorney-at-law, merely as such, has, strictly speaking, no right to make a compromise; yet a court would be disinclined to disturb one which was not so unreasonable in itself as to be exclaimed against by all, and to create an impression that the judgment of the attorney has been imposed on, or not fairly exercised in the case.

■ Here Rumpf had been retained because of his tax experience and he did succeed in reducing a proposed deficiency of about $352,000 (including penalties) to $176,000 (including penalties). The letter he received from Kossoy was not from the taxpayer Senate but from counsel to the estate of Dallago who did not wish to compromise until the total IRS claim against the *estate* was asserted. Rumpf *was* authorized by Senate to appear before IRS and to appear in the Tax Court; that authority was never revoked until February 22, 1974, six months after the Tax Court decision had become final, when new counsel was appointed. Thus, although Rumpf was unauthorized to settle, we cannot agree with appellant that his disregard of Kossoy's advice constituted a fraud upon the court. Whatever liability, if any, Rumpf may have as to Senate or the estate is not the question before us. The point is that vis-a-vis the Tax Court there was no conduct on the part of Rumpf which compromised the merits of the negotiated settlement or which precluded the court from adjudging the matter impartially.

The only decided cases which are relevant to the issue raised on appeal, are of no assistance to appellant. In Flood v. CIR, 468 F.2d 904 (9th Cir. 1972), cert. denied, 411 U.S. 906, 93 S.Ct. 1529, 36 L.Ed.2d 195 (1973), a claim was made that counsel who had been given a general power of attorney settled a tax claim without authority and knowing that his clients did not owe the largest part of the taxes involved. The court held that the Tax Court did not abuse its discretion by denying a motion for special leave to file a motion to vacate. In Toscano v. CIR, 441 F.2d 930 (9th Cir. 1971), the court did remand for an evidentiary hearing on the question of fraud, but it was alleged there (*inter alia*) that the taxpayer's signature had been forged on a joint return. We note here that there was a hearing before the Tax Court on the motion with Senate submitting a memorandum, affidavits and exhibits. And in United States v. Kenner, 455 F.2d 1, 4–5 (7th Cir. 1972), the Court rejected appellant's contention that fraud occurred because his attorneys, in agreeing to a consent order, acted without authority:

> In view of the situation as shown, we hold that appellant's attorneys at least had implied authority to consent to the order [citation omitted]. This implication plainly arises from the fact that appellant without raising any question as to their authority retained them as counsel for fifteen months and further raised no question as to their authority until three years after the order was entered .  .  .  . .

Id. at 5.

We have not been cited to nor have we discovered any case where a court has found the mere settlement of a suit by counsel without authorization to constitute a fraud upon the court which would support a setting aside of a final judgment of the court. The narrow def-

---

**3.** Cf. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), where fraud upon the court was found because a bogus scientific article, written to affect the outcome of a patent litigation, in fact influenced, at least in part, the decision of the court of appeals. This is a clear-cut example of "defiling" the court and precluding it from attaining impartial decision-making, in contrast to the situation we have at bar.

inition of such fraud which has found acceptance in this court generally reflects the policy of putting an end to litigation. See Restatement of Judgments § 1 (1942). We see no good reason here to disturb the decision of the Tax Court. There is no showing of the evil intent, deceit or collusion which have marked those cases where final verdicts have been set aside. Rumpf had worked for three years to obtain a settlement and there is no showing that he took any advantage of his client in settling the dispute. He simply did not follow the instructions of counsel for the estate of the principal stockholder of his client who for reasons of strategy wished to defer settlement. There is no proof or claim that Rumpf was even wrong much less malicious in taking the action he did. In our view that conduct, however else it may be characterized, does not and should not fall within the accepted definition of fraud upon the court.

Affirmed.