DAVID C. GAVIOLA and HELENA M. GAVIOLA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DAVID C. GAVIOLA, DECEASED, and HELENA M. GAVIOLA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gaviola v. Commissioner
Docket Nos. 6484-81, 3254-83.
United States Tax Court
T.C. Memo 1986-349; 1986 Tax Ct. Memo LEXIS 257; 52 T.C.M. (CCH) 54; T.C.M. (RIA) 86349; August 5, 1986. I. Frederick Shotkin, *258 for the petitioners. Lewis R. Mandel and Robert Schneps, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: This matter is before us on petitioner Helena Gaviola's motion to vacate two decisions of this Court, one entered on December 12, 1983 in docket number 3254-83 and the other entered on January 3, 1984 in docket number 6484-81. In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes as follows: Taxable Year
Deficiency
1975
$60,441.00
1976
27,659.12
Decisions were entered pursuant to stipulations of settlement for both taxable years as follows: Date of Entry
Stipulated
Taxable Year
Docket No.
of Decision
Deficiency
1975
6484-81
Jan. 3, 1984
$31,641.00
1976
3254-83
Dec. 12, 1983
27,659.12
The issue for decision is whether the decisions should be vacated on the ground that they resulted from perpetration of fraud on the Court, or alternatively, whether the Court was without jurisdiction to render decisions for the taxable years at issue. FINDINGS OF FACT Petitioners herein are Helena Gaviola and the *259 estate of her late husband, David, represented by Helena as executrix. Helena's residence was in Montauk, New York at the time this motion to vacate was filed. David and Helena were married in 1953. For every year after their marriage they filed joint income tax returns which David prepared, relying on calculations of various expenses compiled by Helena. During 1975 and 1976, Helena resided in petitioners' house in Dix Hills, New York. David, in order to be near his office, maintained an apartment in Greenwich, Connecticut. David used the Greenwich apartment during the week, but returned to Dix Hills on weekends. The joint income tax return filed for the taxble year 1975 showed the Dix Hills, New York address as David and Helena's residence. The joint return for the taxable year 1976 showed the Greenwich, Connecticut address as their residence. The returns for 1975 and 1976 were signed by David and purportedly by Helena. During the time these returns were filed, the marital relationship between David and Helena was strained. Helena knew, however, that she did not file separate returns for 1975 or 1976, that David did file returns for those years, and that such returns *260 purported to be joint returns. In 1980, petitioners sold their house in Dix Hills and purchased a house in Jupiter, Florida, which became Helena's principal residence. During this time, petitioners also owned a house in Montauk, New York. Sometime in 1980, David stopped working, moved from Greenwich, Connecticut, and travelled to Israel and in the northern United States, seeking employment. When he was not travelling, he resided in Jupiter, Florida, or in Montauk, New York. On December 29, 1980, pursuant to a consent (signed by David and purportedly by Helena) which extended the period of limitations for assessment for taxable year 1975 to December 31, 1980, respondent sent to the Connecticut address a notice of deficiency, addressed to David and Helena, for taxable year 1975. Wishing to contest this deficiency, David retained Leonard Schneidman and David Bargman, both attorneys, to represent both him and Helena with respect to deficiencies arising in taxable year 1975 and thereafter. On February 23, 1981, Schneidman and Bargman were given a general power of attorney, which was signed by David and purportedly by Helena. Pursuant to this general power of attorney, Schneidman *261 filed a petition in this Court in David's and Helena's names on March 31, 1981, disputing the 1975 deficiency; the petition was assigned docket No. 6484-81. David died on June 5, 1982; Helena, his sole beneficiary, was appointed executrix of his estate. Helena retained Paul Creditor, her attorney of approximately ten years, to assist her as executrix. Helena received a letter from Schneidman, dated June 28, 1982, recommending that David and she accept a settlement offer with respect to taxable years 1975 and 1976. [1] The letter was sent to the Connecticut address and was forwarded to Helena in Montauk, New York. Upon receipt of the letter, Helena telephoned Schneidman and informed him of David's death. Helena took no other action with respect to her tax matters. She simply forwarded Schneidman's letter to Creditor. Later in 1982, Helena retained an accountant, Alan Rosenberg, to assist her in administering David's estate. On October 29, 1982, Lewis Mandel, respondent's counsel, telephoned Helena in Montauk and discussed the tax *262 liability for 1975 and 1976. Helena told Mandel that Creditor and Schneidman were working together in order to determine whether the proposed settlement offer should be accepted. Because settlement was possible, Mandel referred the case to respondent's Appeals Department. Daniel Slagus, respondent's appeals officer, was assigned to the case. On November 16, 1982, pursuant to a consent (signed by David and purportedly by Helena) which extended the period of limitations for assessment for taxable year 1976 to December 31, 1982, respondent issued a notice of deficiency for taxable year 1976. Copies of the notice of deficiency were sent by certified mail to the Connecticut address, to Jupiter, Florida, and to Dix Hills, New York. Respondent did not send a copy of the notice of deficiency to Schneidman or to Rosenberg. On February 11, 1983, Schneidman filed a petition in this Court on behalf of David, deceased, and Helena, contesting the deficiency for taxable year 1976. Attached to the petition, as required by Rule 34, [2] was a copy of the notice of deficiency. This petition was assigned Docket No. 3254-83. *263 In June, 1983, Schneidman and Slagus discussed settlement offers. Schneidman directed Slagus to discuss the matter with Rosenberg. Slagus then telephoned Rosenberg who told Slagus that the settlement offer was acceptable. Accordingly, Slagus sent a letter to Rosenberg, requesting him to sign and return a proposed closing agreement along with other documents. The letter reminded Rosenberg that the stipulated decision documents would be sent to the attorney of record for signature. Rosenberg did not respond to Slagus' letter and did not return any of Slagus' four subsequent telephone calls. However, Rosenberg forwarded the closing documents to Helena in Florida. Thereafter, Slagus transferred the cases back to Mandel in respondent's District Counsel's office in preparation for trial. In late 1983, Helena and Rosenberg conferred with I. Frederick Shotkin, Helena's current counsel, with respect to Helena's tax matters. Rosenberg subsequently retained Shotkin on Helena's behalf. Meanwhile, on December 1, 1983, Schneidman executed stipulations for entry of decision. On December 12, 1983, a decision was entered pursuant to a stipulation of settlement for petitioners' taxable *264 year 1975; and on January 3, 1984, a decision was entered pursuant to a stipulation of settlement for petitioners' taxable year 1976. In February, 1984, Helena received a letter deted December 6, 1983 from Schneidman, advising her that the two decisions would be entered. Helena forwarded this letter to Rosenberg, who in turn forwarded it to Shotkin. Upon receiving the letter in February or March, Shotkin contacted Schneidman's firm and spoke to Mr. Knuts, Schneidman's associate, who, like Schneidman, was one of Helena's attorneys of record. Shotkin requested copies of any documents in their files that conferred upon Schneidman authority to represent Helena and to enter into stipulations of settlement on her behalf. In May, 1984, Schneidman telephoned Shotkin and told him that his files contained the power of attorney dated February 23, 1981, but no other authorization to act on Helena's behalf. In a confirming letter, dated May 10, 1984, Schneidman wrote "My files do not indicate a return letter from the taxpayers relating to the settlement of the case. I have the distinct feeling, however, that the Service, in the person of Dan Slagus (330-2695) had direct conversations with *265 either Mrs. Gaviola or her accountant which gave rise to the settlement." On March 12, 1984 and April 3, 1984, the decisions entered for taxable years 1975 and 1976, respectively, became final. On August 27, 1984, Helena, through Shotkin, petitioned the Court for leave to move to vacate the decisions entered pursuant to the stipulations of settlement. On December 31, 1984, we ordered that Helena be afforded a hearing in which to litigate the issue of whether our previous decisions resulted from the perpetration of fraud on the Court. Helena contends that the decisions entered by this Court on December 12, 1983 and January 1, 1984 resulted from David's perpetration of fraud on the Court. Specifically, Helena contends David persuaded the Court to compute his tax liability at the rates applicable to married taxpayers filing jointly, when, in fact, no joint return was filed. Helena relies on Toscano v. Commissioner,441 F.2d 930 (9th Cir. 1971) in support of her claim that such conduct constitutes a fraud on the Court. Alternatively, Helena argues that (1) regardless of whether fraud was perpetrated on the Court, the joint notices of deficiency were insufficient *266 to confer jurisdiction on the Court because legitimate joint returns, which otherwise provide the basis for the issuance of joint notices of deficiency, were never filed, and (2) valid consents to extend the period within which deficiencies could be assessed for taxable years 1975 and 1976 were never signed by her and therefore the notices of deficiency were time barred. Respondent concedes that where there has been fraud on this Court, we have jurisdiction to vacate our final decisions. However, contends respondent, Helena failed to prove that such fraud was perpetrated. In support of his contention, respondent argues that (1) Helena was aware of the Tax Court proceedings as of June, 1982, prior to the entries of decision and prior to the time the decisions became final, (2) any defenses she had with respect to the authenticity of her signature on the various documents relied upon by the Court in reaching those decisions should have been raised at that time, and (3) her failure to properly raise her defenses neither constituted fraud on the Court nor did it deprive this Court of jurisdiction to enter the decisions petitioner now seeks to vacate. OPINION *267 When spouses file a joint return, their tax liability is joint and several. The fact that an individual's name is signed to a return is prima facie evidence that the return was actually signed by such individual. Sections 6013 and 6064. Helena bears the burden of proving erroneous respondent's determination that David and Helena filed joint returns for years 1975 and 1976. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Sections 7481 and 7483 provide that a decision of this Court is final 90 days after it is entered if no appeal is taken within that time period. The narrow exception to the rule of finality is where there has been fraud on the Court. Toscano v. Commissioner,supra;Kenner v. Commissioner,387 F.2d 689 (7th Cir. 1968), cert. denied 393 U.S. 841 (1968), affg. an unreported order of dismissal of this Court. Fraud on the Court has been described (7 Moore's *268 Federal Practice, § 60.33, pp. 512-513 (2d ed. 1985)) as: that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.Fraud interpartes, without more, should not be a fraud upon the Court, but redress should be left to a motion under [F.R.Civ.P.] 60 (b)(30) or to independent action. [Fn. refs. omitted.] The Court of Appeals for the Second Circuit, to which an appeal of this case would lie, has accepted Moore's description of fraud on the Court and has held that mere settlement of a suit by counsel without authorization does not constitute such fraud. See Senate Realty Corp. v. Commissioner,511 F.2d 929 (2d Cir. 1975). In this case, we believe that the decisions entered on December 12, 1983 (for year 1976) and January 3, 1984 (for year 1975) were not produced by fraud on the Court. Helena knew of the deficiencies and the settlement offers. She also knew prior to the entering of the decisions that decisions would be entered in accordance with *269 the settlement offers. We believe she knew what was happening, accepted (if not directly, then by her silence) the settlement and now wishes to repudiate it. Helena argues that the returns for 1975 and 1976 could not be joint returns because her signature was forged. We disagree. First, we are not convinced that Helena's signature was forged. Other than her own self-serving testimony, Helena adduced no evidence proving that her signature was fake. Helena bore the burden of proving that her signature was forged. She could have introduced, but did not, expert testimony, or the testimony of anyone familiar with her signature. Also, she could have presented (but did not) documents bearing her admitted signature for our examination and comparison. Even assuming, arguendo, that Helena did not sign the tax returns, the returns could be joint returns. In Federbush v. Commissioner,34 T.C. 740 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963), we considered a situation in which a husband forged his wife's signature on a joint return which she refused to sign. The wife's refusal to sign the return was due to marital discord and not to any matter related *270 to the return itself. The parties had filed joint returns for the previous years, and the wife had never filed a separate return for any of the years at issue. We held that the wife did not intend the nature of the return for the years at issue to differ from the joint nature of the returns filed for other years. Even though the wife did not sign the returns, we held that the intent of the parties to file joint returns was sufficient to characterize them as such. In Howell v. Commissioner,10 T.C. 859 (1948), affd. 175 F.2d 240 (6th Cir. 1949), we held that a wife's failure to sign a return is not fatal to a finding that a joint return was filed.Where the husband files a joint return not signed by the wife, without any objection on her part, and the wife fails to file a separate return, it is presumed that the joint return was filed with the tacit consent of the wife. Hennen v. Commissioner,35 T.C. 747 (1961); Heim v. Commissioner,27 T.C. 270 (1956), affd. 251 F.2d 44 (8th Cir. 1958). Helena filed joint *271 returns with David for approximately 20 consecutive years prior to 1975. She assisted David in preparing those returns and testified that she probably compiled expense summaries for use in preparing the returns for the years in issue. She knew that David continued to file returns after their marital relationship became strained and apparently did not object. She did not file a separate return for 1975 or 1976. We therefore find that Helena intended to file joint returns with David, or at least gave tacit consent to David's filing of joint returns, for 1975 and 1976. Helena argues that we were without jurisdiction to render decisions because respondent improperly issued a joint notice of deficiency for each taxable year at issue. Section 6212(b) authorizes respondent to issue a single notice of deficiency in the case of a joint return, except where respondent has been notified by either spouse that the spouses have established separate residences. Helena does not argue that respondent received any such notice. In furtherance of our finding that joint returns were filed in 1975 and 1976, *272 we hold that respondent properly issued a single joint notice of deficiency for each taxable year. Helena next argues that the notices of deficiency were time barred because they were issued after the period of limitations for assessment had expired. She again relies on her claim that her signature on the consents to extend the period of limitations for assessment was forged. She adduced no evidence, other than her own testimony, in support of this claim. As with her testimony that her signatures on the returns was forged, we likewise are not convinced that her signature on the consents were forged. Moreover, her argument that the period of limitations for assessment had expired does not go, as she supposes, to the question of jurisdiction of the Court. United Business Corp. of America,19 B.T.A. 809 (1930), affd. 62 F.2d 754 (2d Cir. 1933), cert. denied 290 U.S. 635 (1933). Rather, such a claim is an affirmative defense which goes to the merits of the case. Such a defense must be specifically pleaded.Rule 39. Even if Helena had persuaded us that her signature on the consents to extend the period of limitations for assessment was *273 forged (which she has not), her failure to plead the defense of expiration of the period of limitations in the previous proceedings constitutes a waiver of such defense. United States v. Gurley,415 F.2d 144 (5th Cir. 1969), revg. and remanding an unreported District Court case ( M.D. Fla. 1968, 69-1 U.S.T.C. par. 9260) on another issue. Finally, Helena contends that our prior decisions should be vacated because Schneidman was without authority to act as her legal representative. Again, she claims that her signature on the power of attorney dated February 23, 1981, was a forgery. She introduced no evidence, except for her own testimony, in support of this claim. Once again, we are not persuaded by her testimony. At all times, Schneidman acted within the authority conferred on him by the terms of the power of attorney. As we held in Spector v. Commissioner,42 T.C. 110 (1964), we will not set aside a stipulation of settlement entered into by counsel of record where it appears that the taxpayer has second thoughts about a settlement and *274 retains new counsel in an effort to upset it. The record reveals, moreover, that even if Schneidman was not initially authorized to represent Helena, she ratified Schneidman's legal representation of her in the prior proceedings before this Court. She received written notice from Schneidman on June 28, 1982, that he was conducting settlement negotiations on her behalf with respect to the 1975 deficiency. In October, 1982, she told Mandel that Schneidman (and Creditor) were considering the settlement offer. She caused Schneidman to receive a copy of the notice of deficiency for 1976, either by sending it herself or by authorizing Rosenberg to do so. Whether or not she actually signed the power of attorney, she knew that Schneidman was representing her in proceedings before this Court and made no attempt to disabuse him or this Court of the impression that he was authorized to do so.We find that this conduct amounts to ratification of Schneidman's actions as her legal representative. As to the stipulations of settlement, Helena testified that Rosenberg was authorized to communicate with respondent concerning her tax affairs and that Rosenberg knew of Schneidman's involvement in *275 Tax Court proceedings. We are satisfied that Rosenberg was also Helena's authorized agent and that Schneidman would not have executed stipulations of settlement without Rosenberg's consent. The record shows that Rosenberg found the settlement offers for both 1975 and 1976 acceptable. We are also satisfied that Schneidman's execution of stipulations of settlement were authorized, either by Helena herself or by Rosenberg acting on her behalf. [3] Accordingly, Petitioner's motion to vacate decision is denied.
Footnotes
1. The deduction giving rise to the 1975 deficiency was also taken in 1976. The settlement offer therefore applied to both taxable years.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954, as amended, and in effect during the taxable years in issue.↩
3. Petitioner did not call Rosenberg as a witness and offered no explanation for her failure to do so. We presume, therefore, that Rosenberg's testimony would have been unfavorable to petitioner. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513↩ (10th Cir. 1947).