999 F.2d 540
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William K. TRUE, Petitioner,
Margaret H. TRUE, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant,
 No. 92-1700.
 United States Court of Appeals, Sixth Circuit.
 July 20, 1993.
 
 Before: KEITH and SILER, Circuit Judges; and WOODS, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner-taxpayer Margaret H. True appeals the denial of her motion to vacate a 1989 stipulated judgment assessing a tax deficiency against petitioner and her husband, William K. True. The judgment was entered pursuant to a stipulation filed by counsel for respondent Commissioner of Internal Revenue, and by Louis Diamond, counsel for the Trues. Petitioner sought to vacate the judgment on the following grounds: (1) it was void as Diamond had terminated his representation of petitioner prior to executing the stipulated judgment; (2) a fraud had been perpetrated on the Tax Court; and (3) it should be vacated under the inherent power of the Tax Court. The Tax Court denied petitioner's motion to vacate. For the following reasons, we AFFIRM the Tax Court's order.
 
 I.
 
 2
 From 1979 to 1982, the Trues filed joint individual federal income tax returns with the Internal Revenue Service ("IRS"). In 1982, Mr. True invested in a master recording tax shelter offered by Hollywood Entertainment Radio Network Leasing, Inc. ("HERN"). As a result, the Trues claimed an investment tax credit and a loss deduction for 1982, and investment credit carrybacks for the years 1979, 1980 and 1981.
 
 
 3
 On March 12, 1988, the IRS issued a notice of deficiency disallowing the claimed deduction and investment credits. At the time of the issuance of the notice of deficiency, the Trues were in the process of obtaining a divorce. Upon the advice of her divorce counsel, John Wolf, petitioner authorized Diamond, who had been hired by Mr. True to represent him in the tax matter, to represent her interests in the matter as well. Diamond filed a petition on behalf of the Trues with the United States Tax Court seeking a redetermination of the deficiencies and additions to tax for the years 1979-1982. The petition alleged that the HERN investments were made for the primary purpose of making a profit. The petition did not, however, assert an innocent spouse defense under 26 U.S.C. § 6013(e) on behalf of petitioner.
 
 
 4
 On July 14, 1988, the Trues were granted a judgment of absolute divorce.[2] On December 20, 1988, the Tax Court set a trial for May 22, 1989, on the issues raised in the petition. In April, 1989, Diamond and respondent's counsel, Diane Helfgott, negotiated a settlement of all issues arising from the investment in the tax shelter. Under the terms of the settlement, petitioner and her husband would be jointly and severally liable for deficiencies and additions to tax for the years between 1979 and 1982 (hereinafter "stipulated judgment"). In a separate closing agreement, (hereinafter "closing agreement"), the settlement agreement resolved issues for years subsequent to 1982.
 
 
 5
 Respondent's counsel sent Diamond copies of the stipulated judgment and closing agreement and requested that he sign both documents. Diamond signed the proposed stipulated judgment as "counsel for the Petitioners." Diamond also executed the closing agreement as counsel for Mr. True, but informed Helfgott that he did not have the authority to execute the closing agreement on Mrs. True's behalf. He further explained that he had forwarded the copy of the closing agreement to Mrs. True's counsel for further processing. In his letter to Wolf, Diamond stated that he had accepted the stipulated judgment on behalf of the Trues, but noted that the closing agreement had to be signed by Mrs. True.
 
 
 6
 Wolf failed to forward the closing agreement to Mrs. True in a prompt manner. As a result, Helfgott contacted Diamond regarding the proper course of action, and Diamond stated that he would have Mr. True contact Mrs. True to obtain her signature on the closing agreement. On May 15, 1989, Helfgott mailed to Mr. True a copy of the closing agreement with a letter explaining that the agreement had to filed by May 22, 1989, with the signatures of both Trues. Mr. True told Mrs. True that if she did not sign the closing agreement immediately, the IRS would look to her for full payment of the tax liability. Based on this, she signed the closing agreement on the assumption that by doing so she would be relieved from all tax liability as an "innocent spouse" under § 6013(e). Mrs. True wrote the word "innocent" next to the word "spouse" on the line requesting spouse's signature. As a result, the IRS determined that the closing agreement would not be binding on her.
 
 
 7
 On June 1, 1989, the IRS filed the stipulated judgment with the Tax Court, which was entered on June 16, 1989. The closing agreement was not filed with the Court.
 
 
 8
 On April 16, 1990, with new counsel, Mrs. True requested that the Tax Court vacate the stipulated judgment and allow her to file a motion for leave to amend the petition to assert the innocent spouse defense. The Tax Court denied that motion to vacate the stipulated judgment. It found that Mrs. True failed to establish Diamond had abandoned her interest. The court explained that she misinterpreted Diamond's statement that he did not have authority to sign the closing agreement, which merely meant that he could not bind her for years subsequent to those covered by the stipulated judgment, i.e., after 1982. The court further found that Helfgott had not acted negligently in failing to inquire as to Diamond's authority to enter into the stipulated judgment and that the Commissioner was not liable for any misrepresentations made by Mr. True. Finally, the Tax Court rejected the inherent power argument, citing Webbe v. Commissioner, 902 F.2d 688 (8th Cir.1990).
 
 II.
 
 9
 Any appeal of a Tax Court decision must be taken within 90 days after the decision is entered. 26 U.S.C. § 7483. A Tax Court decision becomes final upon the expiration of the time for filing a notice of appeal, if no such notice has been filed. 26 U.S.C. § 7481. The decision may be vacated only in narrowly circumscribed situations. Helvering v. Northern Coal Co., 293 U.S. 191 (1934). This court may only vacate a final decision if there has been a fraud upon the court. Senate Realty Corp. v. Commissioner, 511 F.2d 929, 931 (2d Cir.1975).
 
 
 10
 "Fraud upon the court" has been narrowly defined to embrace:
 
 
 11
 only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so the judicial machinery can not perform in the usual manner its impartial task of adjudging cases.
 
 
 12
 Id. (quoting 7 J. Moore, Federal Practice p 60.33, at 515 (2d ed. 1974)). It generally involves a deliberately planned and carefully executed scheme designed to subvert the integrity of the judicial process. Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 245 (1944). Thus, relief from judgment in the event of fraud on the court should be confined to issues of great moment to the public rather than matters concerning only private parties. See id. at 246.
 
 III.
 
 13
 Mrs. True offers three separate theories to support her motion to vacate judgment. For the following reasons, each of the theories is meritless.
 
 A.
 
 14
 Mrs. True contends that Diamond and respondent's counsel acted negligently as to deprive her of the opportunity to assert an innocent spouse defense. First, she claims that the stipulated judgment was void as Diamond had terminated his representation of petitioner prior to signing the judgment. Diamond was authorized to represent petitioner's interest in the tax litigation for the years 1979 through 1982 by agreement with petitioner herself. Accordingly, Diamond represented to the court and opposing counsel that he had authority to settle the tax litigation on Mrs. True's behalf. By executing the stipulated judgment, he fulfilled his obligations as her counsel. Furthermore, in a July 3, 1989, letter addressed to "Mr. & Mrs. True," Diamond advised them of the Tax Court decision and suggested that they notify him later to discuss potential payment schedules. Thus, Diamond continued his representation of Mrs. True regarding the stipulated agreement, but merely sought her signature on the closing agreement in order to properly conclude the settlement he and opposing counsel had negotiated. Based on these facts, it is clear that Diamond did not abandon his representation of Mrs. True until he adequately and completely met his responsibilities.
 
 
 15
 Second, petitioner made no attempt to communicate to the Tax Court Diamond's lack of authority to represent her before the court. Likewise, she did not raise at any time the innocent spouse defense. In fact, Helfgott was "totally mystified" by the "innocent" notation, but was not obligated to question the purpose or meaning behind the notation. If Mrs. True believed she was entitled to relief from the stipulated judgment under the innocent spouse defense, she should have made a reasonable and legitimate effort to bring this to the court's attention. Thus, her negligence cannot be transferred to Diamond or Helfgott.
 
 
 16
 Finally, petitioner claims that Helfgott acted negligently by filing the stipulated judgment as a separate document from the closing agreement. However, the stipulated judgment and the closing agreement were separate documents addressing two different time periods. When petitioner signed her name with the notation "innocent," Helfgott chose to file only the stipulated judgment. By doing so, she made no misrepresentations to the court regarding the stipulated judgment.
 
 B.
 
 17
 Petitioner further contends that Helfgott made Mr. True her agent for purposes of obtaining petitioner's signature on the closing agreement and was therefore responsible for any misrepresentations Mr. True made to petitioner. An agency relationship involves a "fiduciary relation arising from the consent by one person to another that the other shall act on his behalf and subject to his control." General Bldg. Contractors Assoc. v. Pennsylvania, 458 U.S. 375, 393 (1982). Where an agent does not have express or actual authority to act for a principal, he may have apparent authority to act on behalf of the principal. See In re Foote Memorial Hosp., 946 F.2d 894 (6th Cir.1991) (unpublished). Apparent authority is the authority: (1) the principal knowingly allows the agent to assume or which he holds the agent out as having; (2) which the agent appears to have because of his express authority; and (3) that a reasonable prudent man would believe the agent to have in light of the principal's conduct. Thompson, Ventulett, Stainback & Assoc., Inc. v. The Bob Evans Group, Inc., 952 F.2d 403 (6th Cir.1992) (unpublished) (citing Rich Printing Co. v. Estate of McKellar, 330 S.W.2d 361, 376 (Tenn.1956)). Thus, where a third party believes, in good faith, that the agent has authority to act on behalf of the principal, the principal may be held liable even if there has been no direct contact between the principal and the third party.
 
 
 18
 Contrary to petitioner's position, Mr. True was neither expressly authorized nor "held out" as authorized to act on behalf of Helfgott. In light of the nearing deadline for filing the documents, Diamond informed Helfgott that he would have Mr. True contact petitioner to obtain her signature on the closing agreement. Helfgott's sole contact with Mr. True was a May 15, 1989, letter she sent directly to him enclosing the closing agreement and requesting that the signed document be express mailed back to her office. In the letter, Helfgott advised Mr. True that if he had any questions to contact his attorney, Diamond. Thus, she did not authorize Mr. True to act as her agent. Likewise, Mr. True did not have apparent authority to discuss the tax consequences of the settlement agreement with petitioner. Accordingly, as Mr. True was not Helfgott's agent, the Commissioner was not responsible for any misrepresentations made by Mr. True to petitioner.
 
 C.
 
 19
 Petitioner further contends that the stipulated judgment should be vacated under the inherent power of the tax court to accomplish justice. The Tax Reform Act of 1969 converted the Tax Court from an independent executive branch agency to an Article I court. However, the "legislative history of the 1969 Act clearly indicates that it is to have no effect on existing litigation, jurisdiction, etc." Webbe, 902 F.2d at 698. Thus, the change in status did not effectuate change in the Tax Court's authority to vacate a final decision. Id. As "only the existence of fraud or mutual mistake can justify reopening an otherwise valid settlement agreement," the Tax Court did not have the inherent authority to vacate the stipulated judgment. Brown v. County of Genesee, 872 F.2d 169, 174 (6th Cir.1980).
 
 IV.
 
 20
 For the foregoing reasons, the Tax Court's order is AFFIRMED.
 
 
 
 *
 The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 A settlement agreement signed by the Trues, in June, 1988, was incorporated into the divorce judgment, which provided that any tax liability assessed as a result of audit or past or future returns "shall be the sole responsibility" of Mr. True