T.C. Memo. 1998-81


UNITED STATES TAX COURT


BRUCE L. CARPENTER AND CAROLYN L. CARPENTER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23735-94.               Filed February 25, 1998.


<u>Alan R. Herson</u>, for petitioners.

<u>Gerald W. Douglas</u>, for respondent.


MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This case is before the Court on petition-
ers' motion for leave to file a motion to vacate decision out of
time embodying petitioners' motion to vacate decision (petition-
ers' motion).  Respondent filed a response to petitioners' motion
in which respondent objects to the granting of that motion.  We
shall deny petitioners' motion.

Background

On September 23, 1994, respondent issued a notice of deficiency (notice) to petitioners that determined certain deficiencies in, additions to, and accuracy-related penalties on their Federal income tax (tax) for 1988, 1989, and 1990. Respondent determined in the notice, inter alia, that petitioners received a constructive dividend (constructive dividend) during each of the years 1989 and 1990 from an entity called East Oregon Cattle Company (EOCC) in an amount equal to the fair rental value of a house located on property in Jackson County, Oregon (Modoc property), which respondent determined EOCC owned and in which petitioners lived without paying rent during each of those years.

This case was calendared for trial at the Court's trial session in Portland, Oregon, that began on October 2, 1995. On October 4, 1995, the parties submitted to the Court a stipulated decision document (stipulated decision document) that was signed by counsel for respondent and by petitioners, who were not at that time represented by counsel, and that reflected the agreement of the parties as to the amounts, if any, of petitioners' deficiencies in, additions to, and accuracy-related penalties on their tax for the years at issue. On October 16, 1995, the Court entered a decision in this case pursuant to the agreement of the parties as reflected in the stipulated decision document.

Although no stipulation of settled issues or other similar document was filed with the Court in this case which shows the agreement of the parties with respect to each of respondent's determinations in the notice, petitioners contend in petitioners' motion, and respondent agrees, that, as part of the parties' agreement resolving the issues in this case, petitioners conceded that they received a constructive dividend during each of the years 1989 and 1990, as determined by respondent in the notice.

As part of its efforts to collect the liability resulting from the decision that was entered by the Court in this case, the Internal Revenue Service (IRS) filed a nominee notice of Federal tax lien (nominee lien notice) on July 2, 1996. Different attorneys employed by the IRS were responsible for handling the instant case and the nominee lien notice. The IRS' attorney responsible for the nominee lien notice approved that notice on June 20, 1996. In the nominee lien notice, the IRS alleged that the Colby B. Foundation (foundation) was a nominee of petitioners and of EOCC and that the Modoc property, which was titled at the time of that notice in the name of the foundation, was held by the foundation as nominee of petitioners and EOCC.

On or about September 9, 1996, the IRS issued a levy on the Modoc property (Modoc levy). On or about September 19, 1996, the IRS issued a notice of seizure of that property. On October 3, 1996, the IRS issued a notice of sealed bid sale, which indicated

the IRS' intent to sell the Modoc property in order to satisfy the respective tax liabilities of petitioners and EOCC. That notice scheduled the commencement of the sale of the Modoc property on November 6, 1996.

On October 3, 1996, the foundation filed a complaint in the U.S. District Court for the District of Oregon (District Court case), naming the United States as the defendant, alleging that the Modoc levy constituted a wrongful levy under section 7426(a)[1], and seeking injunctive relief from the imminent sale of the Modoc property. The foundation filed a motion for summary judgment in the District Court case (foundation's motion) that the United States wrongfully levied against the Modoc property in order to collect taxes owed by petitioners and/or EOCC. The United States filed a motion for summary judgment (defendant's motion) in the District Court case that the Modoc levy was proper. On October 22, 1997, the U.S. District Court for the District of Oregon (District Court) issued a detailed order (order) denying the foundation's motion and granting defendant's

---

[1] All section references are to the Internal Revenue Code in effect at relevant times. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.

motion.[2]  The foundation has filed a notice of appeal, appealing the judgment in the District Court case.

As pertinent here, the foundation contended in the foundation's motion (1) that the United States was precluded from asserting that petitioners owned the Modoc property based on the principles of issue preclusion and/or judicial estoppel and (2) that the foundation cannot simultaneously own the Modoc property on behalf of petitioners and EOCC.  The United States contended in defendant's motion, inter alia, (1) that the United States is entitled to levy on the Modoc property to satisfy EOCC's tax liability because the foundation's "interest in the property derives from a fraudulent conveyance" and (2) that the United States is entitled to levy on the Modoc property to satisfy petitioners' tax liability because the foundation qualifies as petitioners' nominee and also "is so thoroughly dominated by * * * [petitioners] as to render it a sham entity."

The District Court found in its order that on September 23, 1994, respondent issued a notice of deficiency to EOCC, which set forth respondent's determinations of deficiencies in, and penalties on, EOCC's tax for 1988, 1989, and 1990.  The District Court further found in its order that on December 23, 1994, EOCC filed

---

[2]  A U.S. magistrate judge of the District Court entered the District Court order and judgment in the District Court case in accordance with the consent of the parties in that case pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. sec. 636(c) (1994).

a petition with this Court, that EOCC and respondent settled the case pending in this Court, and that that settlement was reflected in a decision entered by this Court.

The District Court further recited the following facts in its order: (1) On December 31, 1985, petitioners purchased the Modoc property on behalf of EOCC; (2) on September 16, 1994, petitioners executed a "Bill of Sale" that purported to convey for $10 the Modoc property and all personal property located thereon to a new entity that petitioners established, called New EOCC (New EOCC); (3) sometime after September 1994, EOCC no longer existed, and all that remained of that entity was its unpaid tax liability; (4) on September 16, 1994, petitioners created the foundation; and (5) around October or November 1995, petitioners purported to transfer the Modoc property to the foundation on behalf of New EOCC for no consideration.

With respect to the foundation's assertion of issue preclusion, the District Court held that nonmutual issue preclusion is not available against the United States and that there was no mutuality between the parties to the District Court case and the parties to the respective cases of petitioners and EOCC before this Court because the foundation was not a party to either of those latter cases.

With respect to the foundation's assertion of judicial estoppel, the foundation argued that the United States was

precluded from asserting that "EOCC had title to the Modoc property as the nominee of * * * [petitioners] between 1989 and 1990" since petitioners conceded as part of their agreement with respondent resolving the case that petitioners brought before this Court that they had a constructive dividend which was subject to tax because EOCC, and not petitioners, owned the Modoc property, and petitioners lived on that property rent free. The United States contended (1) that its position was not inconsistent with any prior positions taken by respondent in petitioners' case before this Court and (2) that the issues in the District Court case were being presented for the first time and had not been litigated in petitioners' case before this Court. The District Court agreed with the United States and held:

> 'Judicial estoppel, an equitable doctrine invoked in the discretion of a court, is intended to protect against a litigant playing fast and loose with the courts.' In this case, the court finds that the * * * [United States] is not 'playing fast and loose with the courts'. As pointed out by * * * [the United States], the issues in this case were not and could not have been litigated in the tax court case. <u>The issues in this case involve the relationship between the Carpenters [petitioners] and plaintiff [the foundation] and the EOCC entities and plaintiff [the foundation].</u> This case involves the propriety of certain tax levies, rather than the assessment of taxes. The court will not apply the doctrine of judicial estoppel in this case. [Citations omitted; emphasis added.]

With respect to the United States' contention that the Modoc levy for EOCC's tax liability was proper, the District Court held that the transfer of the Modoc property from EOCC to New EOCC and

from New EOCC to the foundation constituted a fraudulent conveyance under applicable Oregon law and that therefore the United States had demonstrated a sufficient nexus between EOCC and that property to make the levy on that property valid for the purpose of collecting EOCC's tax liability.

With respect to the United States' contention that the Modoc levy for petitioners' tax liability was proper, the District Court explained that if it were to find that the foundation was either a nominee of petitioners or a sham entity, there would be a sufficient nexus between petitioners and the Modoc property to make the Modoc levy valid for the purpose of collecting petitioners' tax liability.  The District Court found on the record before it that the foundation was both a nominee of petitioners and a sham entity and that there was a sufficient nexus between petitioners and the Modoc property to make the levy on that property valid for the purpose of collecting petitioners' tax liability.  The District Court stated in pertinent part:

> It is clear from the facts, cited in defendant's memorandum and reply memorandum and contained in the statement of facts, that * * * [petitioners], especially [petitioner] Bruce Carpenter, maintained total control over the * * * [foundation].  It is also clear from the facts that * * * [petitioners] transferred the Modoc property from * * * EOCC to New EOCC and from New EOCC to * * * [the foundation] in anticipation of the income tax deficiencies. * * * It is also clear from the facts that the funds used to purchase the Modoc property are properly attributed to * * * [petitioners] as set forth in defendant's reply memorandum. * * * [Petitioners] continue to enjoy possession, control, and the benefits of * * * [the foundation's] assets,

including the Modoc property.  Defendant has demon-
strated that * * * [petitioners] and * * * [the founda-
tion] share a 'close relationship'. * * * [Petitioners]
have continued to use the property despite the transfer
of the property among different entities. * * * [Peti-
tioners] continue to pay the bills associated with the
maintenance of the property.  It is clear from the
facts that * * * [the foundation] is * * * [petition-
ers'] nominee. [Citations omitted.]

Discussion

The Court's decision in this case was entered on October 16, 1995.  No notice of appeal or timely motion to vacate or revise the decision was filed in this case, see sec. 7483; Rule 162, and the decision herein became final on January 15, 1996, see sec. 7481(a)(1); Fed. R. App. P. 13(a).

Petitioners' motion was filed on December 2, 1997, over two years after the Court entered the decision in this case.  Once a decision becomes final, the Court may vacate it only in narrowly circumscribed situations, such as where the decision was obtained through fraud on the Court, see Abatti v. Commissioner, 859 F.2d 115, 118 (9th Cir. 1988), affg. 86 T.C. 1319 (1986); Senate Realty Corp. v. Commissioner, 511 F.2d 929, 931 n.1 (2d Cir. 1975), or where the decision is void or a legal nullity for lack of this Court's jurisdiction over either the subject matter or the party, see Billingsley v. Commissioner, 868 F.2d 1081, 1084-

1085 (9th Cir. 1989); Abeles v. Commissioner, 90 T.C. 103, 105-106 (1988).[3]

The Court of Appeals for the Ninth Circuit (Ninth Circuit) has defined the phrase "fraud on the court" to be "'an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'" Toscano v. Commissioner, 441 F.2d 930, 934 (9th Cir. 1971) (quoting England v. Doyle, 281 F.2d 304, 309 (9th Cir. 1960)); see Abatti v. Commissioner, supra at 118.

In order to prove fraud on the Court, petitioners must establish that "an intentional plan of deception designed to improperly influence the Court in its decision has had such an effect on the Court." Abatti v. Commissioner, 86 T.C. at 1325; see Drobny v. Commissioner, 113 F.3d 670, 677-678 (7th Cir. 1997), affg. T.C. Memo. 1995-209, and cases cited therein.

Petitioners make, inter alia, the following contentions in an affidavit attached to and incorporated as part of petitioners' motion:

> The * * * [United States] filed a motion for summary
> judgment in the District Court Case. The * * * [United
> States] contended that the funds used to purchase Modoc
> Property [sic] were properly attributed to Petitioners,
> not to * * * EOCC. According to the * * * [United

---

[3] The Court of Appeals for the Fifth Circuit has indicated that in extraordinary circumstances this Court has the power in its discretion to vacate and correct a final decision where it is based on a mutual mistake of fact. See La Floridienne J. Buttgenbach & Co. v. Commissioner, 63 F.2d 630 (5th Cir. 1933). But see Harbold v. Commissioner, 51 F.3d 618, 621-622 (6th Cir. 1995).

States], * * * EOCC had held mere record title to the Modoc Property, with Petitioners being the beneficiaries of the title. Accordingly, the * * * [United States] argued that economic interest in the Modoc Property had, since its purchase in the name of * * * EOCC, and including 1989 and 1990, belonged to petitioners, not to * * * EOCC.

Petitioners further contend, inter alia, in petitioners' motion:

9. Respondent perpetrated a fraud upon this court in failing to disclose that its true determination was that Petitioners had been the owners of the Modoc Property in 1989 and 1990, and requesting the court to enter its Decision which included deficiencies against Petitioners on the basis, in part, that * * * EOCC was the true owner of the Modoc Property.

10. Had Respondent's true determination been disclosed to Petitioners and to this court, Petitioners would not have agreed to the settlement, and this court would not have entered its Decision. Had Respondent disclosed to Petitioners that its true determination was that Petitioners were the owners of the Modoc Property in 1989 and 1990, Petitioners would not have agreed to the settlement which imposed a constructive dividend on them for their occupancy of the residence located on the Modoc Property.

Respondent argues that petitioners have not established that this Court should exercise its discretion under Rule 162 to grant them leave to file a motion to vacate the decision in this case. We agree with respondent.

There is no evidence in the instant record showing that during the time petitioners' case was pending before us respondent's determination with respect to the Modoc property was that petitioners, and not EOCC, were the owners of that property

during the years at issue.[4] Indeed, the only determination of respondent regarding the Modoc property that was in the record in this case at the time we entered the decision is that set forth in the notice, viz., petitioners received a constructive dividend from EOCC during each of the years 1989 and 1990 in an amount equal to the fair rental value of the Modoc property which respondent determined was owned by EOCC and in which petitioners lived rent free.

Moreover, during the time this case was pending before the Court the parties did not file a stipulation of settled issues or other similar document showing the agreement of the parties with respect to each of respondent's determinations in the notice. Consequently, at the time the Court entered the decision in this case it was unaware of what that agreement was. Thus, the Court did not enter its decision in this case based on respondent's determination in the notice that petitioners received constructive dividends for 1989 and 1990 because they lived on the Modoc

---

[4] Nor do we read the District Court's order as establishing that the United States contended in defendant's motion in the District Court case that petitioners were the owners of the Modoc property during the years at issue in petitioners' case before this Court. As we read the District Court's order, the United States contended, and the District Court found, that the foundation, which was not even created until after the years at issue in the instant case (i.e., on Sept. 16, 1994) and which purportedly held title to the Modoc property since around Oct. or Nov. 1995, was both a nominee of petitioners and a sham entity and that, consequently, the levy on the Modoc property, which the IRS issued on Sept. 9, 1996, was valid.

property which respondent determined was owned by EOCC, or on any other determination that respondent made in the notice.  The Court entered its decision in this case based on the agreement of the parties reflected in the stipulated decision document as to the amounts of any deficiencies in, additions to, and accuracy-related penalties on petitioners' tax for 1988, 1989, and 1990.

On the record before us, we find that petitioners have failed to establish that respondent's conduct while petitioners' case was pending before this Court rises to the level of "an intentional plan of deception designed to improperly influence the Court in its decision", Abatti v. Commissioner, 86 T.C. at 1325, let alone that any such plan, if it had been established by petitioners, "has had such an effect on the Court", id.  We further find that petitioners have failed to show that the decision entered in this case is the result of any other situation that warrants our exercise of our discretion under Rule 162 to grant petitioners' motion.

To reflect the foregoing,

An order will be issued denying petitioners' motion for leave to file a motion to vacate decision out of time embodying petitioners' motion to vacate decision.