CINEMA '84, Richard M. Greenberg, Tax Matters Partner, Petitioners,

Garlon J. Reigler, A non-participating partner, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Docket No. 04–4798–AG.

United States Court of Appeals, Second Circuit.

Argued: May 16, 2005.

Decided: June 22, 2005.

for Respondent–Appellee Commissioner of Internal Revenue.

Before: CARDAMONE and KATZMANN, Circuit Judges, KRAVITZ, District Judge.*

KATZMANN, Circuit Judge.

Appellant Garlon J. Reigler appeals from various orders of the Tax Court, including a May 26, 2004 order concluding that the court lacked jurisdiction to vacate a September 1, 2000 order, which dismissed a partnership-level suit and entered a decision in favor of the Internal Revenue Service. On appeal, Reigler claims that the Tax Court failed to appoint a tax matters partner (TMP) to represent the partnership in the litigation prior to entering the September 1, 2000 order, and consequently, Reigler was deprived of due process. Thus, he contends, this Court should reverse the Tax Court's May 26, 2004 order and require vacatur of the September 1, 2000 order. We disagree and hold that, in this case, the Tax Court was under no duty to appoint a TMP, and hence Reigler was not deprived of due process. We therefore conclude that the Tax Court was without jurisdiction to vacate its September 1, 2000 order.

Sallie W. Gladney (Teresa J. Womack and Thomas E. Redding, on the brief), Redding & Associates, P.C., Houston, TX, for Appellant Garlon J. Reigler.

Robert J. Branman (Eileen J. O'Connor, Assistant Attorney General, and Kenneth L. Greene, on the brief), Tax Division, Department of Justice, Washington, DC, for Respondent–Appellee Commissioner of Internal Revenue.

## I.

Reigler was a limited partner in Cinema '84, a Connecticut limited partnership that was formed to purchase and exploit the rights to a number of films. From 1984 to 1989, the tax years at issue, Cinema '84 filed "information returns" with the Internal Revenue Service (IRS).[1] In 1991,

---

\* The Honorable Mark R. Kravitz, Judge of the United States District Court for the District of Connecticut, sitting by designation.

**1.** Partnerships are not taxable entities under the Internal Revenue Code. *See* 26 U.S.C. § 701. Therefore, instead of filing traditional tax returns, they file "information returns." *See* 26 U.S.C. § 6031; 26 C.F.R. § 1.6031(a)–1.

the IRS audited Cinema '84. At the conclusion of the audits, the IRS issued a Notice of Final Partnership Administrative Adjustment (FPAA) for 1984, 1985, 1986, 1987, 1988, and 1989 and determined that adjustments of the partnership's tax returns were required.

Richard Greenberg was the TMP for Cinema '84. A TMP is "the partner designated to act as a liaison between the partnership and the Internal Revenue Service in administrative proceedings, and as a representative of the partnership in judicial proceedings." *Addington v. Comm'r,* 205 F.3d 54, 60 (2d Cir.2000). In 1992, Greenberg, in his capacity as TMP, filed a petition on behalf of Cinema '84 in United States Tax Court, seeking a redetermination of the adjustments contained in the FPAAs. In January 1994, Greenberg was placed in involuntary bankruptcy and became disqualified to serve as the TMP.

The Tax Court attempted to find a successor TMP on a number of occasions. On June 29, 1994, the Tax Court issued an order explaining, in pertinent part:

> Some of the individual partners have reached a basis for settlement, but these settlements have not been implemented because of the absence of tax matters partners. The Court intends to schedule these cases for a pretrial hearing to consider the appointment of tax matters partners and whether the pending cases will be pursued in the Court by any limited partners. In order to ensure that the individual partners ... are informed of the contents of this order and attached notice, the Court is serving a copy of this order and the attached notice on all partners in the partnership to the extent that they have been identified to the Court.

The court ordered each partner served to appear at a pretrial hearing on September 22, 1994 and stated, "if there is no appearance at this pretrial hearing by any partner of this partnership, unless the case has been disposed of by settlement prior thereto, the Court will dismiss this case and enter a decision in accordance with the amount determined by respondent," the Commissioner of the IRS ("Commissioner").

The "Notice to Partners" accompanying the order explained, in part, that as a result of involuntary bankruptcy proceedings filed against the former TMP, the partnership was without any active TMP. The notice warned, "there still may be substantial tax liabilities resulting from these proceedings for all direct and indirect partners." In addition, it cautioned:

> Any non-settling partner who does not appear in person or by a duly authorized representative will be deemed by the Court to have waived any rights under the Internal Revenue Code or the Tax Court Rules of Practice and Procedure to the appointment of a tax matters partner and to further notice of proceedings in this case. If there is no appearance by any partner of a partnership, that case will be dismissed.

> . . . .

> Counsel for [the Commissioner] has advised the Court that he has developed a settlement position with regard to this case that he is willing to offer to any partner requesting that settlement before the hearing on September 22, 1994. If a partner has any questions concerning that settlement, you or your representative should immediately contact [the Commissioner's representative].

Reigler concedes that the June 29, 1994 order and Notice to Partners were sent to him and admits that he nonetheless did not attend the September 22, 1994 hearing. No partner at the September 22, 1994 hearing advised the court that he or she

desired to be appointed the TMP or to litigate the issues.

On December 21, 1994, the court issued another order, which provided, in part:

The Court must now determine which, if any[,] partners desire to actively participate in this litigation as participating partners, or to be appointed a tax matters partner so that this case may proceed to trial.

This is the partners *last chance* to advise the Court of their desire to participate in this litigation of this case. The failure of any partner to appear who has not settled will constitute a waiver of the right to prosecute this case as to the non-appearing partner, and may result in the dismissal of this case for failure to properly prosecute and entry of decision in favor of [the Commissioner] for the adjustments set forth in the Notice of [FPAA].

The court ordered each partner who wished to participate in the proceeding to file a motion for leave to elect to participate by January 17, 1995. In addition, the court required those partners who desired to serve as TMP to file a request with the court by January 17, 1995. Another pretrial hearing was scheduled for February 8, 1995. Again the court cautioned, "if there is no appearance at this pretrial hearing by any partner of this partnership, ... the Court will dismiss this case and enter a decision in accordance with the amount determined by [the Commissioner]." And again the court warned that "if a tax matters partner is not identified and selected by the close of the pretrial hearing, the Court will dismiss this case and enter a decision in accordance with the amount determined by [the Commissioner]." The clerk of the court was ordered to serve each identified partner with a copy of the order and a notice substantially similar to the "Notice to Partners" accompanying the June 29, 1994 order. Reigler concedes that, as with the prior order and notice, these materials were sent to him, yet he did not attend the February 8, 1995 hearing.

A number of partners were present or represented at the February 8, 1995 hearing. None of them, however, indicated a desire to prosecute the case or to be appointed TMP.

On July 10, 1995, the Commissioner moved to dismiss the case for failure to prosecute. The court held the motion in abeyance while it decided other motions concerning specific partners that were potentially dispositive.

On February 3, 1999, the court ordered yet another pretrial hearing and scheduled it for July 6, 1999. In its order, the court warned: "IF THERE IS NO APPEAR-ANCE BY OR ON BEHALF OF A PARTNER WHO WILL PROSECUTE THIS MATTER, THE COURT WILL DISMISS THIS CASE FOR FAILURE TO PROPERLY PROSECUTE AND ENTER A DECISION SUSTAINING [the Commissioner's] DETERMINATION IN FULL. THIS HEARING WILL NOT BE CONTINUED FOR ANY REASON." The court again ordered the clerk of the court to send the order to all identified partners, including Reigler. Reigler concedes that the order was sent to him, but for a third time, he did not attend the scheduled hearing.

On September 1, 2000, after various settlements were finalized on behalf of a number of partners, the Tax Court (Wells, *C.J.*) granted the Commissioner's motion to dismiss the action as to those partners who did not settle. Again, the court ordered the clerk to serve the order on all identified partners on the attached list, including Reigler.

Reigler did not file a post-decision motion to vacate or revise the decision. However, one partner, Karin Locke, did timely appeal to this Court on grounds specific to her. We subsequently reversed and remanded with directions to dismiss the petition with respect to Ms. Locke. *See generally Cinema '84 v. Comm'r*, 294 F.3d 432 (2d Cir.2002) (per curiam). The Tax Court entered an order dismissing Ms. Locke from the suit on March 24, 2003.

Finally, on December 9, 2003—more than eight months after the Tax Court entered an order dismissing the suit against Locke and more than three years after the Tax Court dismissed the action for failure to prosecute—Reigler filed a number of motions, essentially seeking to vacate the underlying September 1, 2000 dismissal by the Tax Court. Reigler argued that the prior dismissal should be vacated because it was "filed without the participation of a valid TMP" and that the Tax Court's failure to appoint a TMP violated the partners' due process rights. Reigler additionally requested that the Court appoint him as the TMP.

On March 23, 2004, the Tax Court denied Reigler's motions. The court considered whether it had the authority to vacate a final order under any circumstances, and it concluded that it did; however, the court determined that its authority was limited and extended only to cases in which there had been a fraud on the court, a lack of jurisdiction, or the presence of a clerical error. The court concluded that none of the exceptions applied, that it therefore lacked jurisdiction to entertain Reigler's applications, and that vacatur was consequently not proper in this case. Special Trial Judge Powell explained:

> Irrespective of which standard . . . is used, movant's allegations fall far short

for purposes of vacating our decision in this case. He alleges that the named tax matters partner (TMP), Richard M. Greenberg, was in bankruptcy and was disqualified as the TMP. This is correct. Movant then asserts that either the Tax Court or [the Commissioner] should have appointed a new TMP. This ignores the fact that, since 1995, the Court attempted in vain to find a limited partner who would be willing to serve as the TMP. Finally, movant alleges that the Court's affirmance of [the Commissioner's] determinations created a whipsaw that "is patently unreasonable, unfair, unjust and inequitable." We are willing to assume that this is also correct. But the fact is that none of these allegations, standing alone or together, constitute a fraud on the Court or other valid reason for vacating a final decision of this Court.

*Cinema '84 v. Comm'r*, 122 T.C. 264, 271, 2004 WL 566246 (2004). Reigler filed a motion for reconsideration on June 25, 2004, which the Tax Court denied on July 6, 2004.

Reigler now appeals the Tax Court's refusal to reopen the proceedings.[2] Reigler presses many arguments, all of which essentially claim that the Tax Court had a duty to appoint a TMP and its failure to do so deprived Reigler of due process, thereby warranting vacatur of the Tax Court's underlying decision. We disagree, and write to clarify that, in this case, the Tax Court was under no obligation to appoint a TMP.

## II.

### A.

■ We review a Tax Court's denial of a motion to vacate a final decision for

---

**2.** Reigler's notice of appeal contends, *inter alia*, that he additionally appeals the Tax Court's September 1, 2000 order; however,

such an appeal would be time-barred and is consequently not properly before this Court. *See* Fed. R.App. P. 13.

abuse of discretion. *See Senate Realty Corp. v. Comm'r*, 511 F.2d 929, 931 (2d Cir.1975). However, whether the Tax Court had jurisdiction to consider a motion is a question of law, which we review *de novo*. *See Merrill Lynch & Co. v. Comm'r*, 386 F.3d 464, 469 (2d Cir.2004).

## B.

Section 7481 of the Internal Revenue Code provides that if a decision of the Tax Court has been modified or reversed by the Court of Appeals, as in this case, then the decision of the Tax Court "rendered in accordance with the mandate of the United States Court of Appeals shall become final on the expiration of 30 days from the time such decision of the Tax Court was rendered." 26 U.S.C. § 7481(a)(3)(B). In compliance with this Court's decision in *Cinema '84 v. Commissioner*, 294 F.3d 432 (2d Cir.2002) (per curiam), the Tax Court entered an order dismissing Karin Locke from the suit on March 24, 2003, and its decision became final 30 days later.[3]

Several Courts of Appeals have suggested that once the Tax Court's decision becomes final, the court no longer has the authority to vacate its decision. *See, e.g., Harbold v. Comm'r*, 51 F.3d 618, 621 (6th Cir.1995); *Webbe v. Comm'r*, 902 F.2d 688, 689 (8th Cir.1990); *see also Lentin v. Comm'r*, 243 F.2d 907, 909 (7th Cir.1957) (concluding without discussion that "the Tax Court was without jurisdiction" to set aside or modify a decision that became final). Other Courts of Appeals have recognized limited exceptions to the rule that a Tax Court does not have jurisdiction to

vacate a decision that has become final. For example, courts have recognized an exception where a "fraud on the court" has been committed. *See, e.g., Drobny v. Comm'r*, 113 F.3d 670, 677 (7th Cir.1997); *Toscano v. Comm'r*, 441 F.2d 930, 933 (9th Cir.1971); *see also Senate Realty Corp.*, 511 F.2d at 931 n. 1 (suggesting, but not directly holding, that such an exception exists). In addition, courts have found vacatur warranted where the Tax Court lacked jurisdiction in the first place. *See Billingsley v. Comm'r*, 868 F.2d 1081, 1084–85 (9th Cir.1989); *see also Abeles v. Comm'r*, 90 T.C. 103, 105–06, 1988 WL 2747 (1988). Finally, the Seventh Circuit has held that the Tax Court has the authority to vacate a final decision that contains a clerical error that was not discovered until after the decision became final. *See Michaels v. Comm'r*, 144 F.3d 495, 497–98 (7th Cir.1998).

■ This Court has rejected the strict rule that the Tax Court, without exception, lacks jurisdiction to vacate a decision that has become final. *See Senate Realty Corp.*, 511 F.2d at 931 n. 1. However, we have not explicitly adopted any of the exceptions to the general rule, discussed *supra*. In any event, it is unnecessary for us to decide in the present case which, if any, of the exceptions this Court recognizes because regardless of how Reigler's argument is characterized, vacatur was not warranted here, where the Tax Court was under no duty to appoint a TMP and its failure to do so did not deprive Reigler of due process.[4]

---

**3.** While Reigler disagrees with the Tax Court's conclusion as to when the court's decision became final, he concedes that the decision was final when he filed his motions.

**4.** Reigler couches his arguments in terms of Rule 60 of the Federal Rules of Civil Procedure, and complains that the Tax Court failed

to consider its authority to vacate its judgment pursuant to that rule.

It is worth noting that the Tax Court has its own rules of procedure. Tax Court Rule 162 addresses motions to vacate a decision of the Tax Court, but does not provide guidance as to whether a decision of the Tax Court can be vacated if it has become final, and if so, under

Tax Court Rule 250 provides that "if a partner's status as the tax matters partner is terminated ..., then the Court *may* appoint another partner as the tax matters partner if the partnership fails to designate a successor tax matters partner within such period as the Court may direct." Tax Ct. R. 250(b) (emphasis added); *see also* 26 U.S.C. § 7453 (authorizing the Tax Court to prescribe its own rules of procedure). The clear language of the rule indicates that responsibility for designating a successor TMP lies with the partnership, not with the Tax Court; if, however, the partnership fails to appoint a TMP, the Tax Court *may*, not must, appoint a successor. Thus, while the Tax Court could have appointed a successor TMP when Greenberg's status as the TMP was terminated, it was not required to do so.

*Computer Programs Lambda, Ltd. v. Commissioner*, 90 T.C. 1124, 1988 WL 54149 (1988) [hereinafter *CPL II*], upon which Reigler relies, does not suggest otherwise. In *CPL II*, the Tax Court considered whether it had the authority to appoint a limited partner as the TMP where, prior to the commencement of the partnership level suit, all the general partners had become disqualified, *see id.* at 1125; *Computer Programs Lambda, Ltd. v. Comm'r*, 89 T.C. 198, 200–03, 1987 WL 42563 (1987) [hereinafter *CPL I*], and where the partnership, itself, had failed to elect a new TMP, despite the court's urging, *CPL II*, 90 T.C. at 1125–26. Recognizing the importance of a TMP, *see id.* at 1126, the *CPL II* court held that it was within its "inherent powers as a Court to appoint a tax matters partner," *id.* at 1127. But the Tax Court stopped short of holding that the Tax Court had a *duty* to appoint a TMP. Accordingly, Reigler's reliance on *CPL II* is misplaced.

■ Of course, the limits of Rule 250, as well as the precedent of the Tax Court, do not preclude us from assigning a duty to the Tax Court in a case where doing so is essential to secure the due process rights of the partners. *Cf. CPL II*, 90 T.C. at 1126 (noting the importance of a TMP in ensuring the "fair, efficient and consistent disposition of partnership proceedings"); *Transpac Drilling Venture 1982–12 v. Comm'r*, 147 F.3d 221, 225, 228 (2d Cir. 1998) (finding that a TMP, once appointed, has a fiduciary duty to the limited partners, who "secure their due process protection as a result of the fact that the TMP stands in a fiduciary relationship toward them," but nonetheless concluding that a TMP was not absolutely necessary and noting that a "TMP-lessness" partnership was "not unprecedented"). However, this is not such a case. Here, the Tax Court took considerable measures to safeguard the partners' rights. The court regularly kept the partners abreast of the status of the proceedings: the court's orders, accompanied by a notice to partners, were mailed to each identified partner, including

---

what circumstances. Tax Ct. R. 162. Tax Court Rule 1, however, provides that "[w]here in any instance there is no applicable rule of procedure, the Court or the Judge before whom the matter is pending may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand." Tax Ct. R. 1. Hence, it was within the Tax Court's discretion to consider whether vacatur was warranted pursuant to Rule 60. *See, e.g., Michaels*, 144 F.3d at 497 (considering whether vacatur was justified under Rule 60(a) of the Federal Rules of Civil Procedure). However, because we conclude that Reigler was not deprived of due process and his arguments are therefore without merit, it is unnecessary for us to decide whether the Tax Court abused its discretion by failing to contemplate vacatur pursuant to Rule 60.

Reigler.[5] Together, the orders and notices warned the partners of potential tax liabilities and advised them of settlement offers by the Commissioner. More importantly, they alerted the partners to the numerous pretrial hearings at which the court would consider the appointment of a TMP, and urged the partners to attend the hearings. The notices and orders made clear the importance of a TMP, that the partnership was without one, and that the litigation could not go forward until a partner willing to serve as the TMP came forward. Finally, the court repeatedly warned that if no partner was willing to serve in such capacity, the case would be dismissed and a decision entered in favor of the Commissioner. Thus, the Tax Court fully appreciated the function of the TMP, assumed the TMP's responsibility of informing the partners, provided ample opportunity for the partners to come forward and be heard, and made substantial efforts to have a successor TMP promptly selected. Reigler was accordingly afforded notice and an opportunity to be heard; due process requires nothing more in this instance.

Reigler, however, failed to heed the Tax Court's warnings and neither settled with the Commissioner nor entered an appearance at any of the hearings. In addition, even after the Tax Court dismissed the suit and entered a decision in favor of the Commissioner, Reigler failed to file a post-decision motion to vacate or revise the decision. Indeed, Reigler never spoke up until after he received the tax bill. At that point, it was too late. The Tax Court's judgment had become final, and because Reigler cannot establish any grounds justifying departure from the general finality

rule in this case, the Tax Court is without jurisdiction to vacate its final order.

Reigler's remaining claims are plainly without merit.

Accordingly, the May 26, 2004 decision of the Tax Court is hereby Affirmed.

---

**5.** Reigler makes much of the fact that the Tax Court did not send the orders and notices to all partners, but only to those the court was able to identify. Certainly, if one of the unidentified partners was before us, they might have a colorable due process claim. However, Reigler nowhere contends that he did not receive notice. Indeed, Reigler concedes that the orders and notices were sent to him. Reigler therefore cannot claim that he, personally, was deprived of due process.