T.C. Memo. 2005-190


UNITED STATES TAX COURT


ALL COMMUNITY WALK IN CLINIC, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MOHAMMED A. GAZI AND ESTATE OF RAEES I. GAZI, DECEASED,
MOHAMMED A. GAZI, PERSONAL REPRESENTATIVE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 7949-98, 7950-98.    Filed July 28, 2005.


Caroline D. Ciraolo, for petitioners.[1]

Monica J. Miller, for respondent.

_____

[1] Petitioners were represented by Jay E. Kauffman when they filed their petitions. On Mar. 12, 2004, Caroline D. Ciraolo entered these cases. On Dec. 15, 2004, the Court granted petitioners' motions to withdraw Mr. Kauffman as counsel in these cases.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, Judge:  This matter is before the Court on petitioners' motions for leave to file motions to vacate the final decisions of this Court, which were entered July 8, 2003 (the motions).[2]  Petitioners contend that the decisions resulted from perpetration of fraud on the Court by their former counsel, Jay E. Kauffman (Mr. Kauffman), and respondent's counsel, Monica J. Miller (Ms. Miller), in entering into allegedly unauthorized settlement agreements.  Respondent disagrees and objects to the motions.

## Procedural Background

On January 30, 1998, respondent issued a notice of deficiency with respect to Mohammed A. and Raees I. Gazi (the Gazis), and a separate notice of deficiency with respect to Mrs. Gazi's wholly owned corporation, All Community Walk In Clinic.[3]  With respect to the Gazis, respondent determined increases in tax liabilities for tax years 1983 to 1989 totaling $787,982; respondent also asserted civil fraud penalties totaling about $500,000.  With respect to All Community Walk In Clinic, respondent determined increases in tax liabilities for tax years 1983 to 1989 totaling $341,043, plus

---

[2] Due to an identity of issues presented by the motions before the Court, the cases at docket Nos. 7949-98 and 7950-98 have been consolidated herewith for the purpose of this opinion.

[3] Raees I. Gazi died on July 23, 2003, after the decisions had been entered in these cases.

additions to tax for negligence and delinquency. The adjustments in the notices of deficiency reflected primarily respondent's determinations that petitioners had understated income and overstated deductions. Many of the issues in the two cases are intrinsically related.

On April 29, 1998, the Gazis and All Community Walk In Clinic filed petitions in this Court, challenging respondent's determinations in the notices of deficiency. The petitions were signed by Mr. Kauffman, who is an attorney authorized to practice before this Court. On June 30 and July 2, 1998, respondent filed answers in these cases. The cases were set for trial at the session of the Court beginning April 26, 1999, in Tampa, Florida.

On February 11, 1999, pursuant to Rule 90, respondent filed requests for admission in the Gazis' case (docket No. 7950-98).[4] In the 133 numbered items in respondent's requests for admission, respondent requested the Gazis to admit the various elements of the adjustments to taxable income reflected in the Gazis' notice of deficiency. No response to respondent's request for admissions was filed by or on behalf of the Gazis. Consequently, pursuant to Rule 90(c), each matter set forth in respondent's requested admissions was deemed admitted.

---

[4] Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure and section references are to the Internal Revenue Code, as amended.

On March 15, 1999, respondent filed motions to compel responses to interrogatories and document production requests that respondent had served on petitioners in each of these cases on February 10, 1999.  By Orders dated March 18, 1999, this Court granted respondent's motions in that petitioners were required, on or before April 1, 1999, to respond to the interrogatories and document production requests.  Petitioners were further ordered to show cause in writing on or before April 5, 1999, why the Court should not impose sanctions, or else to advise the Court in writing by that date that they were in full compliance with the Court's Order.  Petitioners filed no response to the Court's Orders to Show Cause.

On March 22, 1999, the trials in these cases were continued, and the parties were ordered to file periodic status reports.  On behalf of respondent, Ms. Miller filed status reports in May, August, and September 1999; in each report, she advised the Court that petitioners and respondent's revenue agent were meeting regularly to discuss settlement.  Petitioners filed no status reports.

By notices dated August 3, 2000, for the second time, the Court set these cases for trial, at the session of the Court beginning January 8, 2001, in Tampa, Florida.  Subsequently, because no courtroom was available in Tampa, the Court changed the place of trial to Jacksonville, Florida.  On December 13,

2000, petitioners filed motions for continuance on the ground that moving the trials to Jacksonville would work a hardship on them. The Court granted petitioners' motions for continuance.

On May 10, 2001, for the third time, the Court issued notices setting the cases for trial, at the session of the Court beginning October 15, 2001, in Tampa, Florida. Pursuant to the parties' joint requests, on September 25, 2001, the trials were continued again.

On May 23, 2002, for the fourth time, the Court issued notices setting the cases for trial, at the session of the Court beginning October 28, 2002, in Tampa, Florida. On October 16, 2002, petitioners filed motions for continuance, on the grounds that the Gazis had moved to Baltimore, Maryland, and wished to transfer the place of trial there. The Court granted petitioners' motions.

On December 18, 2002, for the fifth time, the Court issued notices setting the cases for trial, at the session of the Court beginning May 19, 2003, in Baltimore, Maryland. On January 23, 2003, the Court ordered the parties to file a joint status report on or before March 19, 2003, advising the Court of the progress that had been made in preparing for trial. On March 19, 2003, respondent filed a status report, signed by Ms. Miller, indicating that on the basis of representations by petitioners and their counsel, she believed that a forthcoming revenue

agent's final report should form the basis for a probable settlement.  Petitioners filed no status report.

On May 7, 2003, the Court received respondent's trial memoranda, as required by the Court's Standing Pre-Trial Order. The Court received no trial memorandum from petitioners.

On May 8, 2003, the Court made absolute its March 18, 1999, Orders to Show Cause why the Court should not impose sanctions on petitioners pursuant to Rule 104; as a sanction, the Court ordered that petitioners were prohibited from introducing into evidence any testimony or documents that would have been responsive to respondent's discovery requests served on petitioners February 10, 1999.

On May 13, 2003, respondent filed a supplemental status report, dated May 12, 2003, in which Ms. Miller stated, among other things, that in a telephone conversation on May 5, 2003, Mr. Gazi had informed Ms. Miller that he was attempting to work out the details of retaining a Baltimore attorney, Mark Edward Kell (Mr. Kell) to represent petitioners; and that in a telephone conversation on May 7, 2003, Mr. Kell had told Ms. Miller that he "believed he would be entering his appearance, and that he would be requesting a continuance", and that he would send Ms. Miller a facsimile of his entry of appearance when it was ready for filing so that they could have a meaningful discussion of these cases. The supplemental status report states:

It is now Monday, May 12th, 2003. Respondent's counsel has heard nothing further from petitioners, petitioners' former counsel, or petitioners' prospective counsel. Moreover, petitioners' former counsel is no longer authorized to act on behalf of petitioners; petitioners' prospective counsel has not provided an entry of appearance or power of attorney so is not authorized to act on behalf of petitioners; and respondent is prohibited from contacting petitioners directly because petitioners are represented by counsel. Therefore, respondent has no one with whom to complete trial preparation or the stipulation process.[5]

On May 14, 2003, these matters were discussed in a telephonic conference among the Court, Mr. Kauffman, and Ms. Miller. Mr. Kauffman informally requested the Court to continue these cases and to allow him to withdraw as counsel. The Court advised that any motion to continue or to withdraw as counsel should be filed with the Court in writing and that the parties should be prepared to argue any such motions on the record at the May 19, 2003, calendar call. Petitioners filed no motion to continue these cases or to withdraw Mr. Kauffman as counsel. No other representative filed any entry of appearance on petitioners' behalf.

On May 16, 2003, in a telephonic conference with the Court, Mr. Kauffman and Ms. Miller reported that the parties had agreed to bases for settling these cases. They requested permission for

---

[5] Also on May 13, 2003, respondent filed motions to request a date and time certain in these cases, and a motion to consolidate these cases for trial, briefing, and opinion, wherein Ms. Miller made similar statements. These motions were ultimately denied as moot.

respondent's local Baltimore counsel to lodge facsimile decision documents with the Court at the May 19, 2003, calendar call, so that Mr. Kauffman and Ms. Miller would not have to travel from Florida to Baltimore for that purpose. To allow time for reviewing the tax computations in the decision documents, they requested to have until June 30, 2003, to submit stipulated decisions.

At the May 19, 2003, calendar call in Baltimore, Maryland, counsel for respondent, Clare Brooks, appeared and lodged with the Court facsimile decision documents, signed by Mr. Kauffman and Ms. Miller, in each of these cases. There was no appearance by or on behalf of petitioners. On June 3, 2003, a stipulated decision in docket No. 7949-98, executed by Mr. Kauffman and Ms. Miller, was submitted to the Court. The stipulated decision reflected a full concession by petitioner All Community Walk In Clinic. On June 5, 2003, the Court entered its decision in docket No. 7949-98 pursuant to the stipulation. No notice of appeal or timely motion to vacate or revise the decision having been filed in this case, the decision in docket No. 7949-98 became final on September 1, 2003. See sec. 7481(a)(1); Fed. R. App. P. 13(a).

On June 30, 2003, the parties submitted to the Court a stipulated decision in docket No. 7950-98, executed by Mr. Kauffman and Ms. Miller. The stipulated decision reflected

certain concessions by both parties:  Total deficiencies for the 7 years at issue were reduced by $568,259 ($219,723 in the stipulated decision versus $787,982 in the notice of deficiency), and additions to tax for negligence were substituted for the civil fraud penalty, resulting in a further reduction of over $300,000 in petitioners' tax liability as determined in the Gazis' notice of deficiency.  On July 8, 2003, the Court entered its decision in docket No. 7950-98 pursuant to the stipulation.  No notice of appeal or timely motion to vacate or revise the decision having been filed in this case, the decision in docket No. 7950-98 became final on October 6, 2003.  See sec. 7481(a)(1); Fed. R. App. P. 13(a).

On March 12, 2004, petitioners filed motions for leave to file motions to vacate final decisions in these cases, lodging therewith their motions to vacate.  The motions were signed by Caroline D. Ciraolo, who on the same date filed entries of appearance in these cases.  Also on the same date, petitioners filed motions to withdraw Mr. Kauffman as counsel in these cases.

On December 15, 2004, the Court held an evidentiary hearing in Washington, D.C., with respect to the motions.[6]  At the commencement of the hearing, the Court granted petitioners' motions to withdraw Mr. Kauffman as counsel.  At the conclusion

---

[6] The hearing was delayed in part at the request of petitioners' new counsel because of her pregnancy.

of the hearing, the Court directed the parties to file legal briefs.

## FINDINGS OF FACT

The parties have stipulated some facts, which we incorporate herein by this reference.

After the petitions were filed in these cases, petitioners, directly and indirectly through Mr. Kauffman, attempted to work with respondent's revenue agent toward settlement. After four continuances of these cases, Ms. Miller sent Mr. Kauffman a letter dated April 10, 2003, enclosing a revenue agent's report and corresponding computations, along with a settlement proposal for both cases. Ms. Miller's letter stated that trial was scheduled for May 19, 2003, that petitioners had repeatedly delayed this matter, and that it was her belief that the Court would allow no further delays. The letter stated that, in preparing the report upon which the settlement offers were based, the revenue agent had considered and, for the most part, accepted the latest information provided by petitioners. With respect to the Gazis' case, the letter stated that for settlement purposes only, respondent would agree to substitute negligence penalties for the civil fraud penalty, and that the settlement offer would result in a reduction of about $500,000 in taxes and of about $300,000 in penalties. With respect to the All Community Walk In Clinic case, the letter stated that "because the petitioners have

effectively conceded the corporate case", the settlement proposal would require a full concession by petitioner in that case. The letter stated that the settlement proposals were final and would be withdrawn unless accepted on or before May 2, 2003.

On April 30, 2003, Mr. Kauffman contacted Ms. Miller, advising her that he was unable to reach petitioners, having lost contact with them. He requested an extension of the settlement offer deadline. Ms. Miller offered to help locate the Gazis' address and agreed to extend the settlement offer deadline on the condition that Mr. Kauffman express mail to the Gazis the settlement proposal and the notice setting the case for trial.

On May 2, 2003, Mr. Gazi received from Mr. Kauffman the April 10, 2003, settlement proposal and notice of the May 19, 2003, trial session. Mr. Gazi immediately called Ms. Miller, explaining that he had just received the package and that Mrs. Gazi was very ill.[7] Ms. Miller told him that he should call his attorney and that the settlement offer had been extended to May 5, 2003.

Mr. Gazi then contacted Mr. Kauffman. He told Mr. Kauffman about his wife's medical condition and said that they did not want to settle; they wanted to go to trial. Mr. Kauffman advised

---

[7] Sometime in February or March 2003, Mrs. Gazi had been hospitalized and diagnosed with carcinoid syndrome.

Mr. Gazi to find local counsel in Baltimore, where the cases were set for trial.

Mr. Gazi contacted Mark E. Kell, a Baltimore tax attorney. In a meeting with Mr. Gazi on May 6, 2003, Mr. Kell laid down three conditions that needed to be satisfied before he would agree to represent petitioners in these cases: First, he would not represent petitioners unless continuances were granted in these cases because "I'm not taking a case that's been around for seven years 10 days before trial." Second, he required petitioners to pay him, in advance, a $20,000 fee. Third, he required an opportunity to review the files to see if petitioners "have a case". Mr. Gazi telephoned Ms. Miller from Mr. Kell's office and left a voice message requesting Ms. Miller to contact Mr. Kell. Mr. Gazi also told Mr. Kauffman that he was meeting with and retaining Mr. Kell. Subsequently, Ms. Miller and Mr. Kauffman learned that Mr. Kell did not intend to enter these cases unless they were continued.

Shortly after the initial meeting with Mr. Kell, Mr. Gazi paid him $500. Mr. Kell told him that he could not accept the $500 to start working on petitioners' cases but agreed to accept it as partial payment for time he had already spent on their cases. Petitioners never paid Mr. Kell the remainder of the requested advance $20,000 fee. Mr. Kell never entered an appearance in these cases. Nevertheless, sometime before May 7,

2003, Mr. Gazi spoke to Ms. Miller and told her that Mr. Kell was representing petitioners and "that since we are here in Baltimore, Mr. Kauffman will not be representing us".[8]

On the morning of May 14, 2003, Mr. Gazi faxed to Mr. Kauffman and Ms. Miller copies of physicians' letters regarding Mrs. Gazi's medical condition. Later that day, Mr. Kauffman advised Mr. Gazi of the telephonic conference with Ms. Miller and the Court, in which the Court had declined to entertain Mr. Kauffman's informal motions for continuance. Mr. Gazi relayed this information to Mr. Kell. According to Mr. Kell's contemporaneous notes of this conversation, which are in evidence: "The issue of Jay Kauffman withdrawing and my entering my appearance will be resolved after the continuance is granted, not before." In another conversation that day, Mr. Kell advised Mr. Gazi that depending on how much he owed the IRS, the approximately $800,000 reduction reflected in respondent's settlement offer might be "too good to pass up." He also indicated to Mr. Gazi that because of the deemed admissions relating to the income items in the Gazis' case, "he may not have a case at all".

---

[8] Apparently on the basis of these representations, in various documents filed with the Court on May 12, 2003, (as previously described) Ms. Miller stated that "petitioners' former counsel [Mr. Kauffman] is no longer authorized to act on behalf of petitioners".

The morning of May 15, 2003, Mr. Gazi faxed a letter to Mr. Kell and Mr. Kauffman, addressed "Dear Mark and Jay", in which he complained that respondent's revenue agent had made "repeated mistakes" in her report. Mr. Gazi's letter stated: "We have to restart the whole case".

The afternoon of May 15, 2003, Mr. Kauffman faxed to Ms. Miller written motions to continue these cases, attaching the physicians' letters he and Ms. Miller had received from Mr. Gazi. The motions to continue were never filed with the Court. The facsimile transmission to Ms. Miller also included written motions by Mr. Kauffman to withdraw as counsel in these cases. The motions to withdraw as counsel, which were never filed with the Court, state that petitioners owed Mr. Kauffman over $20,000, that on May 5, 2003, Mr. Kell had informed Mr. Kauffman that petitioners were retaining him as counsel, and that on May 14, 2003, Mr. Kauffman spoke with Mr. Gazi "who confirmed that Mr. Kell had been retained. During the conversation irreconcilable differences arose between the petitioner and Kauffman making it impossible for Kauffman to continue his representation." The motion quotes respondent's supplemental status report, dated May 12, wherein Ms. Miller had stated: "petitioners' former counsel is no longer authorized to act on behalf of petitioners".

Shortly after faxing these documents to Ms. Miller, Mr. Kauffman had a telephonic conference with Mr. Gazi and Ms.

Miller.  In this telephonic conference, Mr. Gazi confirmed Mr. Kauffman's authority to represent petitioners.  In a separate conversation with Mr. Gazi on the evening of May 15, 2003, Mr. Kauffman went over respondent's settlement offer and urged that petitioners should accept it; he opined that because of petitioners' financial situation, they should be able either to work out an offer in compromise or else eventually pursue bankruptcy.  According to Mr. Kauffman's testimony, Mr. Gazi authorized Mr. Kauffman to settle the cases.

The next morning, May 16, 2003, Mr. Kauffman telephoned Ms. Miller and advised her that "we've got permission to settle and we've got an agreement", pending his review of some documentation and a review of the calculations.  Later that day, after the parties had reported the settlement agreement to the Court in a telephonic conference, Mr. Gazi telephoned Mr. Kell.  According to Mr. Kell's notes, Mr. Gazi had "called J.K. [Jay Kauffman] and was told continuance granted to 6/30/03.  J.K. and M.M. [Monica Miller] were also told to settle."  Mr. Kell pointed out to Mr. Gazi "the advantages of settling and then doing a Chapter 7 in three years and a day from the assessment date."  Mr. Kell and Mr. Gazi had no further communications until November, as described below.

On June 15, 2003 (after the decision documents had been lodged with the Court and shortly before the stipulated decisions

were due to be submitted to the Court), Mr. Kauffman met with Mr. Gazi and his son in Baltimore, after driving from Florida for that purpose. At this meeting, which lasted for several hours, Mr. Kauffman reviewed the settlement offer in the Gazis' case with Mr. Gazi and his son for computational errors or omitted adjustments. Mr. Kauffman then explained to Mr. Gazi and his son that he would contact Ms. Miller and request further review of certain items. He gave Mr. Gazi an "approximate number" of the "fairly large" tax liability that would result from the settlement agreement and reiterated that petitioners could pursue previously discussed options in seeking an offer in compromise or uncollectible status. Mr. Kauffman then went out to dinner with Mr. Gazi and his son.

Mr. Kauffman subsequently spoke with Ms. Miller and requested several computational adjustments. Certain computational adjustments were made, as reflected in the stipulated decision that was filed with the Court on June 30, 2003.

In November 2003, Mr. Gazi received IRS collection notices for the liabilities reflected in the stipulated decisions. Mr. Gazi called Mr. Kell to seek his legal assistance. In a letter to Mr. Kell dated November 18, 2003, Mr. Gazi wrote: "I have fired Mr. Kauffman." Mr. Kell declined to take the case, and Mr.

Gazi asked Mr. Kell to return the $500 he had paid him in the spring.

OPINION

A decision of this Court becomes final 90 days after it is entered, if no party files a notice of appeal.  Secs. 7481(a)(1), 7483.  A motion to vacate or revise a decision generally must be filed within 30 days after entry of the decision, unless the Court permits otherwise.  Rule 162.

The finality of a decision is generally absolute, and the Tax Court's authority to vacate a final decision is limited. Cinema '84 v. Commissioner, 122 T.C. 264, 270 (2004), affd. 2005 WL 1459573, 2005 U.S. App. LEXIS 11956 (2d Cir., June 22, 2005). This Court has jurisdiction to set aside an otherwise final decision if there is fraud on the Court.  Id.; see Davenport Recycling Associates v. Commissioner, 220 F.3d 1255, 1259 (11th Cir. 2000), affg. T.C. Memo. 1998-347; Taub v. Commissioner, 64 T.C. 741, 751 (1975), affd. without published opinion 538 F.2d 314 (2d Cir. 1976).  In the context of a motion to vacate a final Tax Court decision, fraud on the court is narrowly construed to require "'an unconscionable plan or scheme which is designed to improperly influence the court in its decision,' preventing the opposing party 'from fully and fairly presenting his case.'" Davenport Recycling Associates v. Commissioner, supra at 1262 (quoting Abatti v. Commissioner, 859 F.2d 115, 118 (9th Cir.

1988), affg. 86 T.C. 1319 (1986)); see <u>Toscano v. Commissioner</u>, 441 F.2d 930, 934 (9th Cir. 1971), vacating 52 T.C. 295 (1969). To prove fraud on the court, petitioners bear the heavy burden of presenting specific facts establishing that "an intentional plan of deception designed to improperly influence the Court in its decision has had such an effect on the Court." <u>Abatti v. Commissioner</u>, 86 T.C. at 1325; see <u>Drobny v. Commissioner</u>, 113 F.3d 670, 677-678 (7th Cir. 1997), affg. T.C. Memo. 1995-209; <u>Kenner v. Commissioner</u>, 387 F.2d 689, 691 (7th Cir. 1968).

In their memoranda in support of their motions for leave to file motions to vacate, petitioners state: "Petitioners' former counsel, Jay Kaufman [sic], and Respondent's counsel, Monica Miller, perpetrated a fraud against the Tax Court, even if done unintentionally, by executing settlement agreements and Decision documents without Petitioners' knowledge or authorization, and with the full knowledge that Mr. Kaufman [sic] did not represent Petitioners at the time the documents were executed."

At the outset, we observe that petitioners' notion of persons "unintentionally" perpetrating fraud on the court runs contrary to the basic legal precepts just discussed. Moreover, the mere fact that counsel might settle a suit without the client's authorization does not establish fraud on the court so as to support vacating a final decision. See <u>Senate Realty Corp. v. Commissioner</u>, 511 F.2d 929 (2d Cir. 1975); <u>Flood v.</u>

<u>Commissioner</u>, 468 F.2d 904 (9th Cir. 1972), affg. T.C. Memo. 1969-249.

More fundamentally, petitioners have not convinced us that Mr. Kauffman lacked authority to settle petitioners' cases.  As the May 19, 2003, trial session approached, Mr. Gazi explored having Mr. Kell replace Mr. Kauffman as petitioners' counsel. The evidence clearly shows, however, that Mr. Kell declined to take petitioners' cases for a variety of reasons:  Because no continuance had been granted (no written motion for a continuance having been filed), because Mr. Gazi had not paid him the requested $20,000 advance fee, and because Mr. Kell had lacked an opportunity to adequately assess the merits of petitioners' cases.

Moreover, on the basis of all the evidence, we do not believe that Mr. Gazi fired Mr. Kauffman until after the entry of the decisions in these cases.[9]  The evidence shows that on May 15, 2003, Mr. Gazi faxed materials to Mr. Kauffman and Ms. Miller in support of a continuance; that at least through May 16, 2003, Mr. Gazi continued to have telephone conversations with Mr. Kauffman regarding petitioners' cases; and that in June 2003 (having ceased communications with Mr. Kell) Mr. Gazi met with Mr. Kauffman to discuss the cases.

---

[9] In fact, the record does not establish that Mr. Gazi would have had any authority to fire Mr. Kauffman as counsel of record for All Community Walk In Clinic.

Petitioners put great weight on various documents that Ms. Miller filed with the Court on May 13, 2003, which stated that Mr. Kauffman was no longer authorized to represent petitioners. We believe that Ms. Miller made these representations in good faith, advising the Court of the situation as she then understood it, on the basis of information that she had recently received (i.e., that the Gazis had retained Mr. Kell and fired Mr. Kauffman) but that would shortly prove to be incorrect. Far from supporting petitioners' allegations that Ms. Miller sought to perpetrate a fraud on the Court, these statements reinforce our perception that Ms. Miller's actions in these cases have been consistent with her responsibilities as an officer of this Court. Especially after the telephonic conference with the Court on May 14 and subsequent telephonic conferences between Mr. Kauffman and Mr. Gazi, one of which included Ms. Miller, it became apparent to all concerned that Mr. Kell had entered no appearance in these cases, that he was unlikely to do so before the May 19 trial session, and that Mr. Gazi continued to deal with Mr. Kauffman as petitioners' counsel. Thereafter, Ms. Miller acted reasonably, in good faith, and in accordance with Mr. Kauffman's presumptive authority as petitioners' counsel of record, in dealing with Mr. Kauffman as petitioners' authorized representative.

Indeed, on brief, petitioners seem to acknowledge that, at least throughout the period immediately before the May 19, 2003,

calendar call, Mr. Kauffman continued to represent petitioners. They contend, however, that his authority was limited to seeking a continuance on petitioners' behalf. But if that is so, the question arises: Exactly how did petitioners intend to proceed when their eleventh-hour requests for continuances, made informally in a telephonic conference on Wednesday, May 14, 2003, were not entertained by the Court? The cases were set for trial in Baltimore the next Monday. Insofar as the record reveals, petitioners had done little or nothing to ready these cases for trial. No trial memoranda had been filed on petitioners' behalf.[10] Deemed admissions appear to have resolved most of the income items against the Gazis. Pursuant to the Court's May 8, 2003, Order sanctioning petitioners for failing to respond to the Court's March 18, 1999, Order to Show Cause, petitioners were prohibited from introducing into evidence any testimony or documents that would have been responsive to respondent's discovery requests served on petitioners February 10, 1999. The local Baltimore counsel that Mr. Gazi had sought to retain refused to enter these

---

[10] Pursuant to the Court's Standing Pre-Trial Orders, dated Dec. 18, 2002, unless a basis of settlement had been reached, each party was required to submit a trial memorandum to the Court no later than 15 days before the first day of the May 19, 2003, trial session. In their trial memoranda, the parties were required, among other things, to identify trial witnesses and provide a brief summary of their testimony. The Court's Standing Pre-Trial Order states: "Witnesses who are not identified will not be permitted to testify at the trial without leave of the Court upon sufficient showing of cause."

cases. Unless petitioners took some action, they faced possible dismissal of their cases and entry of decisions against them, as stated in the Court's December 18, 2002, notices setting the cases for trial.

That potential outcome obviously would have been less attractive to petitioners than respondent's settlement offer, which offered substantial concessions; specifically, a reduction in the Gazis' tax liability of about $800,000, including substitution of negligence penalties for the fraud penalty. Mr. Gazi had received this settlement offer on May 2, 2003. He had discussed it with Ms. Miller, Mr. Kauffman, and Mr. Kell. Both Mr. Kell and Mr. Kauffman had advised him of the benefits of accepting the settlement offer and later pursuing options to avoid paying the resulting tax liability. Especially in light of these various considerations, we find credible Mr. Kauffman's testimony that on May 15, 2003, Mr. Gazi authorized him to pursue settlement with Ms. Miller and a short time later authorized him to accept respondent's settlement offer.

Petitioners seem to suggest that someone, ostensibly Mr. Kauffman, misled Mr. Gazi into believing that the Court had granted a last-minute continuance of these cases, and that Mr. Kauffman and Ms. Miller then proceeded in bad faith to enter into a settlement agreement that they knew petitioners had not authorized and that was never disclosed to petitioners. We find

petitioners' theory implausible in light of the evidence.  It is true that Mr. Kell's contemporaneous notes indicate that on May 16, 2003, Mr. Gazi told Mr. Kell that there was a "continuance granted to 6/30/03".[11]  According to these same notes, however, Mr. Kauffman and Ms. Miller "were also told to settle."  Although it is unclear from these notes exactly who "told" Mr. Kauffman and Ms. Miller to settle, on the basis of all the evidence we believe it most likely was Mr. Gazi.  The evidence clearly shows, contrary to petitioners' allegations, that Mr. Gazi expected Mr. Kauffman and Ms. Miller to settle the cases--a conclusion that is reinforced by the immediate cessation of communications between Mr. Gazi and Mr. Kell and the absence of any evidence that petitioners were doing anything to prepare for the new trial date that Mr. Gazi supposedly believed was only a month away.

Petitioners do not now dispute that Mr. Kauffman traveled from Florida to Baltimore to visit Mr. Gazi and his son on June 15, 2003.[12]  We find credible Mr. Kauffman's testimony that the

---

[11] June 30, 2003, was the deadline requested by the parties for submitting stipulated decisions in these cases.  We surmise that the "continuance" referred to in Mr. Kell's notes relates to this deadline beyond the scheduled trial session.

[12] In an affidavit attached to petitioners' memoranda in support of the motions for leave to file motions to vacate, Mr. Gazi averred that the meeting with Mr. Kauffman occurred in April 2003, before petitioners had received respondent's settlement offers.  Petitioners appear to have abandoned this version of the facts.  Petitioners' inconstancy with regard to this and other significant factual allegations undermines their credibility.

purpose of this meeting, which lasted several hours, was to identify any computational issues with respondent's settlement offers and that, in fact, Mr. Kauffman subsequently relayed to Ms. Miller several computational problems that had been identified at this meeting.  We do not find credible petitioners' suggestion that Mr. Gazi thought the purpose of this meeting was simply to discuss petitioners' case with Mr. Kauffman.  It is hard to square petitioners' suggestion with their allegation that Mr. Kauffman was no longer authorized to represent them during this time.  Moreover, if, as petitioners suggest, on June 15, 2003, Mr. Gazi was operating under the impression that the cases had been continued until June 30, 2003 (as Mr. Kell's notes indicate Mr. Gazi told him), it is telling that Mr. Gazi had not renewed his efforts to have Mr. Kell enter these cases (a continuance having been one of Mr. Kell's major preconditions) and, insofar as the record reveals, was doing nothing else to prepare these cases for the trials that he supposedly believed were upcoming in 2 weeks.  On the basis of all the evidence, we are led to the conclusion that Mr. Gazi was doing nothing to prepare the cases for trial because he understood the cases were to be settled in accordance with the settlement offer that Mr. Kauffman had traveled to Baltimore to review with him.[13]

---

[13] We are not insensitive to the fact that Mrs. Gazi was gravely ill during this time.  Undoubtedly, Mr. Gazi was

(continued...)

Conclusion

Petitioners have failed to establish specific facts demonstrating that Mr. Kauffman or Ms. Miller perpetrated any fraud on the Court. In particular, petitioners have failed to show that Mr. Kauffman lacked authority to consent to the entry of the decisions in these cases or that Ms. Miller, at the time the settlement agreement was reported to the Court or the stipulated decision documents were submitted, had reason to believe he lacked such authority. The mere fact that Ms. Miller previously had filed documents with the Court stating that Mr. Kauffman was no longer authorized to act on petitioners' behalf, does not suggest that Ms. Miller sought to perpetrate a fraud on the Court by entering into the settlement agreement. To the contrary, we believe that Ms. Miller acted reasonably and in good faith by bringing the issue to the Court's attention and discussing it with the Court, Mr. Kauffman, Mr. Kell, and Mr. Gazi. We find that by

---

[13](...continued)
distracted and preoccupied with his wife's health. We do not believe, however, that this circumstance explains why Mr. Gazi would have been wholly inattentive to lining up new counsel, making trial preparations, or seeking further continuances, if he actually believed that the trials had been continued until June 30, 2003, as he told Mr. Kell. Indeed, Mr. Gazi had been keenly focused on petitioners' Tax Court cases at least since May 2, 2003, when he received respondent's settlement offers, through the period that culminated with his June 15, 2003, meeting with Mr. Kauffman in Baltimore. We do not find credible petitioners' suggestion, which is supported by no credible evidence, that Mr. Gazi had ceased to attend to these cases because he was under the impression that the trials had been continued until some indefinite future date.

the time of the settlement agreement, Ms. Miller reasonably believed (as did the Court) that those issues had been satisfactorily clarified and resolved.

Ultimately, it appears to us that Mr. Gazi, having authorized Mr. Kauffman to settle these cases, now wishes to repudiate the settlement agreement. It may well be that Mr. Gazi authorized the settlement agreement only to avoid the worse predicament of proceeding to trial not merely unprepared but also severely disadvantaged by deemed admissions and Court-ordered sanctions resulting from petitioners' repeated failures to comply with the Court's Rules and Orders. Nevertheless, such a circumstance affords no basis for setting aside this Court's final decisions in these cases. Accordingly,

<u>Appropriate orders will be issued denying petitioners' motions for leave to file motions to vacate the final decisions of this Court</u>.